# <u>Exhibit 1</u>
# State Court Filings

5/31/24, 11:48 AM

Click to Print

| Submitted By: | Court | Plaintiff | Defendant | | Printed on: 5/31/2024 11:47:59 GMT-0400 (Eastern Daylight Time) |
|---|---|---|---|---|---|

**Case History Search**
Search Created:
5/31/2024 11:47:59 GMT-0400 (Eastern Daylight Time)

ⓘ Filter the transactions by clicking on the Court, Plaintiff, or Defendant button.

---

| **Court:** | WY Chancery Court | **Judge:** | Sharpe, Steven K | **File & ServeXpress Live Date:** | 5/7/2024 |
| **Division:** | | **Case Number:** | CH-2024-0000010 | **Document(s) Filed:** | 11 |
| **Case Type:** | Fiduciary Duty-Breach | **Case Name:** | Michael Steimle et al. vs. Andrew Thompson | **Date Range:** | All |

☑ **Include Pending Items**

⬇ Export    1-6 of 6 transactions    <<Prev  Page 1 of 1  Next>>

| Transaction | ▼Date/Time | Option | Case Number Case Name | Authorizer Organization | Document Type | Document Title | Review Status | Size |
|---|---|---|---|---|---|---|---|---|
| 73261390 | 5/29/2024 4:34 PM MDT | File Only | CH-2024-0000010 Michael Steimle et al. vs. Andrew Thompson | Robert Walker, Walker Law LLP | Motion | For Temporary Restraining Order | Accepted | 0.2MB |
| | | | | | Exhibit | Exhibit 1 - Affidavit of Michael Steimle | Accepted | 1.8MB |
| | | | | | Exhibit | Exhibit 2 - Attorney Certification in Support of Temporary Restraining Order | Accepted | 0.3MB |
| | | | | | Proposed Order | Proposed Order Granting Temporary Restraining Order | Accepted | 0.1MB |
| 73133705 | 5/21/2024 12:37 PM MDT | File Only | CH-2024-0000010 Michael Steimle et al. vs. Andrew Thompson | Robert Walker, Walker Law LLP | Affidavit | Affidavit of Service | Accepted | 0.7MB |
| 73083916 | 5/16/2024 1:32 PM MDT | File And Serve | CH-2024-0000010 Michael Steimle et al. vs. Andrew Thompson | Gena Hansen, WY Court Users | Notice of Judge Assignment | Notice of Judge Assignment | Accepted | 0.1MB |
| 73014843 | 5/9/2024 3:55 PM MDT | File Only | CH-2024-0000010 Michael Steimle et al. vs. Andrew Thompson | Robert Walker, Walker Law LLP | Motion for Preliminary Injunction | Plaintiffs' Motion for Preliminary Injunction | Accepted | 0.2MB |
| 72935003 | 5/7/2024 4:38 PM MDT | File Only | CH-2024-0000010 Michael Steimle et al. vs. Andrew Thompson | Robert Walker, Walker Law LLP | Precipe | Praecipe for Summons | Accepted | 0.1MB |
| | | | | | Summons | Summons | Accepted | 0.2MB |
| 72934869 | 5/7/2024 4:23 PM MDT | File Only | CH-2024-0000010 Michael Steimle et al. vs. Andrew Thompson | Robert Walker, Walker Law LLP | Complaint - Initial Filing | Complaint | Accepted | 0.2MB |
| | | | | | Case Cover Sheet | Case Cover Sheet | Accepted | 0.2MB |

| | | | Thompson | | Case Cover Sheet | Case Cover Sheet | Accepted | 0.2MB |

Filed



05/07/2024

CH-2024-0000010

WY Chancery Court
May 07 2024 04:23PM
Unassigned
72934869
N/A

**FILED**

Robert J. Walker (#7-4715)
WALKER LAW
114 East 7th Ave., Suite 200
P.O. Box 22409
Cheyenne, WY   82003
Telephone: (307) 529-2255
Robert@WyoCounsel.com

*Attorney for Plaintiffs*

## IN THE CHANCERY COURT, STATE OF WYOMING

| | |
|---|---|
| MICHAEL STEIMLE, individually; )<br>MICHAEL STEIMLE, derivatively on )<br>behalf of and in the right of AZURE )<br>HOLDING GROUP, LLC, a Wyoming )<br>Limited Liability Company, )<br>                                                  )<br>        *Plaintiffs,*                          )<br>                                                  )<br>vs.                                              )<br>                                                  )<br>ANDREW THOMPSON, individually; )<br>                                                  )<br>        *Defendant.*                         ) | Case No. CH – 2024-_____ |

## COMPLAINT

COME NOW, the Plaintiff, Michael Steimle, both individually and derivatively on behalf of and in the right of Azure Holding Group, LLC ("Azure Holding"), a Wyoming Limited Liability Company (collectively referred to hereafter as the "Plaintiffs"), and for their Complaint against Andrew Thompson (the "Defendant"), plead and allege as follows:

## PARTIES, JURISDICTION, AND VENUE

1.     At all times relevant hereto, Azure Holding was a Wyoming Limited Liability Company organized pursuant to the provisions of the Wyoming Limited Liability Company Act (W.S. §§ 17-29-101 *et. seq.*).

2.     Azure Holding was formed in June of 2022 to serve as the holding company for other entities.

3.     Azure Holding is a seventy percent (70%) owner of Azure Renewables, S.A. ("Azure Renewables"), a Costa Rican "Sociedad Anonima" formed in July of 2022.

4.     Azure Renewables is developing technologies related to processing agricultural byproducts that can then be used in both the agriculture and construction industries.

5.     Azure Renewables is still in the development stage and has secured investment to fulfill its business plan.  Those investors make up the remaining thirty percent (30%) ownership of Azure Renewables.

6.     Azure Renewables was also to be the parent company and sole owner of Azure Development Group, LLC ("Azure Development"), a Delaware limited liability company.

7.     Azure Development was formed in February of 2023.

8.     At all times relevant to this Complaint, Michael Steimle ("Steimle" or "Plaintiff") was a resident of Georgia, and a 50% owner and member of Azure Holding.

9.     Michael Steimle was also appointed to serve as the President of Azure Renewables.

10.     Michael Steimle is also the sole owner and member of M3 Construction Inc., an entity that is performing approved construction project development contract work for Azure Renewables.

11.     Michael Steimle is a 50% owner of M3 Engineering, LLC, an entity that is performing approved engineering project development contract work for Azure Renewables.

12.     Andrew Thompson, the Defendant, was at all times relevant to the above-captioned matter a resident of North Carolina.

13.     Andrew Thompson is a 50% owner and member of Azure Holding.

14.     Andrew Thompson was also appointed to serve as the Treasurer of Azure Renewables.

15.     Andrew Thompson was asked to form Azure Development on behalf of Azure Holding, but upon information and belief, Azure Development was formed as a sole-member LLC with Andrew Thompson appointing himself as its sole member.

16.     This Court has proper jurisdiction and venue over Plaintiffs' claims against Defendant as Azure Holding, LLC was organized pursuant to the provisions of the Wyoming Limited Liability Company Act, this dispute seeks both declaratory and injunctive relief, as well as seeks money damages in excess of $50,000, and the case arises from claims involving breach of the Wyoming Limited Liability Company Act, breach of fiduciary duties, and includes a derivative action.  *See* W.S. § 5-13-115.

## FACTS COMMON TO PLAINTIFF'S CLAIMS FOR RELIEF

17.     In 2022, Steimle and the Defendant began the joint development of a business model that, very generally, would process an agricultural byproduct common in Costa Rica.

18.     Steimle's role was primarily to use his engineering, construction, and project management background to develop the intellectual property necessary to process the byproduct, and to develop that technology.

19.     Defendant's role was primarily to work with investors and to assist in providing and finding funding for the project.

20.     Defendant was also responsible for forming the various legal entities pursuant to the business model agreed upon by Steimle and the Defendant.

21.     So, on or about June 8, 2022, Defendant formed Azure Holding in Wyoming.

3

22. Azure Holding is a member-managed LLC with both Defendant and Steimle owning an equal 50% controlling interest in the company.

23. Steimle was never provided any operating agreement for Azure Holding, has never seen an operating agreement for Azure Holding, and never consented to or in any way approved any operating agreement for Azure Holding.

24. Then, on or about July 26, 2022, Steimle and Defendant jointly formed and created Azure Renewables in Costa Rica.

25. Azure Holding is presently the 70% owner of Azure Renewables.

26. Next, Defendant formed Azure Development on or about February 27, 2023

27. Defendant explained he wanted to form Azure Development to be the operations company that would control and track the financials of the development of Azure Renewables.

28. Upon information and belief, Azure Renewables consented to the formation of Azure Development as its wholly owned subsidiary.

29. Upon information and belief, Defendant set up Azure Development as a sole-member LLC; however, with him individually as its sole owner rather than Azure Renewables.

30. Defendant also set up bank accounts for Azure Holding, Azure Renewables, and Azure Development. Plaintiff Steimle has equal access and control over the Azure Renewables account, very limited access to the Azure Development account, and no access or control over the Azure Holding account.

31. Defendant has been inconsistent in the use of the accounts for payments and deposits. There are times when Defendant pays invoices from Azure Development, and later the same vender is paid from Azure Holding' account. Similarly, some venders are now paid from Azure Renewables when payments used to come from Azure Holding. It is unclear why Defendant makes transfers between the three separate accounts.

32.     Upon information and belief, Defendant has used the three accounts to hide the transparency of his transactions; and that he uses the Azure Holding account for any hidden transactions because no other individual has oversight over that account.

33.     Defendant routinely initiates transactions for all three bank accounts without consulting with or seeking permission from Azure Holding or Azure Development.

34.      On or about April 12, 2024, Steimle, through his counsel, sent a demand letter requesting, among other things, that:

      a.  The financials of Azure Development and Azure Renewables be audited and presented at the annual shareholder meeting for Azure Renewables;

      b.  Copies of the operating agreements, and related organizational documents, for Azure Holding and Azure Development be provided;

      c.  Steimle be included, in his role as President of Azure Renewables, in all future meetings with investors, investment banks, and any others doing business with the companies.

      d.  Copies of documentation or support showing reimbursements to Defendant and the Secretary of Azure Renewables, Kevin Tangen.

      e.  Defendant cease from engaging with third parties on behalf of the jointly owned entities without following through with corporate formalities and consulting with Steimle.

35.     Since the demand letter was sent, Defendant has refused or otherwise filed to provide any supporting documentation for substantial payments made from Azure Development and Azure Holding to Defendant, third parties, and Kevin Tangen.

36.     Defendant has also delayed payments to M3 Construction, out of the bank accounts, for labor already executed for the benefit of Azure Renewables, while not delaying payment to his preferred vendors.

37.     Defendant has also delayed project development payments to Michael Steimle, out of the Azure accounts, for ongoing project development services being executed for the benefit of

Azure Renewables, while not delaying payment to Defendant, Kevin Tangen, and Defendants preferred vendors.

38.    Defendant has also failed to consult with Azure Renewables generally, or Steimle relating to the status of ongoing investment opportunities; and has generally failed to secure new investment as needed to complete the development of the companies' projects.

39.    Defendant has also refused or otherwise failed to provide any of the operating agreements or organizational documents for Azure Holding or Azure Development as required.

40.    Additionally, Defendant has implied through various communications that he intends to hold a shareholder meeting for Azure Renewables where he intends to use Azure Holding' 70% vote to remove Steimle from his role as President of Azure Renewables.

41.    However, Azure Holding, the Wyoming LLC, has had no membership meetings in relation to its controlling interests in Azure Renewables, and Plaintiff Steimle, as a 50% controlling member, does not consent to Defendant unilaterally using or voting Azure Holding' controlling interests in Azure Renewables.

42.    As a 50/50 member-managed LLC, any actions taken by Azure Holding could only be approved unanimously by each member.

43.    Upon information and belief, Defendant intends to act unilaterally to remove Steimle from his role as President of Azure Renewables, in part, so that he can continue his activities without the oversight and transparency Steimle has demanded.

44.    Pursuant to W.S. § 17-29-901, "a member may maintain a direct action against another member, a manager, or the limited liability company to enforce the member's rights and other wise protect the member's interests, including rights and interests under the operating agreement. . . ."

45.    Similarly, pursuant to W.S. § 17-29-902:

A member may maintain a derivative action to enforce a right of a limited liability company if: (i) The member first makes a demand on the other members in a member-managed limited liability company . . . requesting that they cause the company to bring an action to enforce the right, and the managers or other members do not bring the action within a reasonable time; or (ii) A demand under paragraph (i) would be futile.

46.     In this case, making a demand on Defendant would be futile under W.S. § 17-29-904(ii) because it is akin to asking the other 50% member to bring an action against himself for violating Plaintiff's interests and acting against the best interests of Azure Holding.

47.     Notwithstanding, on May 3, 2024, a notice was sent to the above-captioned Defendant as well as to all shareholders in Azure Renewables stating, among other things, that Steimle was a 50% owner of Azure Holding and that any action taken unilaterally on behalf of Azure Holding' interests in Azure Renewables would be unauthorized.

48.     Defendant has no authority to act unilaterally in relation to business conducted for and in behalf of Azure Holding, including in the formation and control over Azure Development and its bank accounts.

49.     Defendant has no authority to act unilaterally in relation to voting Azure Holding' interests in Azure Renewables.

50.     This action is not a collusive action to confer jurisdiction that this Court would otherwise lack.

51.     Steimle reasonably, fairly, and adequately represents the interests of all similarly situated members of Azure Holding in enforcing the company's interests in this action.

## FIRST CAUSE OF ACTION AGAINST DEFENDANT:
## BREACH OF OPERATING AGREEMENT (Individually and Derivatively)

52.     Plaintiff, Steimle, individually and derivatively on behalf of and in the right of Azure Holding, incorporates herein by this reference paragraphs 1 through 51 of this Complaint as if set forth fully herein.

53.     An Operating Agreement constitutes a binding contract between Plaintiff, Steimle, and Defendant.

54.     No written operating agreement was ever approved by the members of Azure Holding.

55.     Notwithstanding, Wyoming authorizes implied operating agreements based on the conduct of the parties.

56.     It was always understood, and numerous communications, representations, and documents reflect, that Azure Holding is a 50/50 member-managed LLC.

57.     Steimle and Defendant both own an equal 50% controlling interest in Azure Holding.

58.     Since Azure Development was authorized by Azure Renewables to be its wholly owned subsidiary, Azure Holding indirectly controls Azure Development through its 70% ownership interest in Azure Renewables.

59.     Defendant has breached the operating agreement of Azure Holding by attempting to call a meeting to unilaterally vote Azure Holding' 70% interest in Azure Renewables for the purpose of removing Steimle from his role as President.

60.     Defendant has breached the operating agreement of Azure Holding by creating Azure Development as a sole-member LLC in his personal name, directly adverse to the interests of Azure Holding.

61.     Defendant has breached the operating agreement of Azure Holding by failing to provide any documentation or information to Steimle relating to actions he has taken and communications he has made on behalf of Azure Holding.

62.     Defendant has breached the operating agreement of Azure Holding by stating to Steimle that he did not intend to retain any tax counsel for Azure Holding or Azure Development, and that "he wouldn't say anything if Steimle didn't."

8

63.    Defendant has breached the operating agreement of Azure Holding by failing to inform Plaintiff of meetings of Azure Renewables where its interests might be voted.

64.    Defendant has generally breached the operating agreement of Azure Holding by failing to keep Plaintiff informed, by making unilateral decisions on which vendors would be paid through the Azure Development accounts, and by failing to keep Azure Holding informed of investors being contacted.

65.    As a result of the Defendant's breach of the Operating Agreement, Plaintiff Steimle has incurred damages in excess of Two Hundred Thousand Dollars ($200,000.00).

## SECOND CAUSE OF ACTION AGAINST DEFENDANTS:
### BREACH OF FIDUCIARY DUTY (Individually and Derivatively)

66.    Plaintiff, individually and derivatively on behalf of and in the right of Azure Holding, incorporates herein by this reference paragraphs 1 through 65 of this Complaint as if set forth fully herein.

67.    Defendant has a fiduciary duty of loyalty and duty of care as a member of Azure Holding.

68.    The above-captioned Defendant has acted unilaterally on behalf of Azure Holding without authority in the formation of Azure Development when he placed the entity into his sole name.

69.    The above-captioned Defendant has acted unilaterally is his control over all funds intended to be used for the benefit of Azure Holding and Azure Renewables.

70.    The above-captioned Defendant has breached his fiduciary duty by failing to provide the other member of Azure Holding with documents, communications, and information relevant and critical to its ongoing operations.

71.    The above-captioned Defendant has indicated he will continue to act unilaterally on behalf of Azure Holding as more fully set forth above, including in an attempt to unilaterally

vote Azure Holding' 70% interest in Azure Renewables to remove Plaintiff from his role as President within that organization.

72.     Defendant's actions, as more fully set forth above, have been self-serving and intended to protect him from having to account for the actions he has unilaterally taken on behalf of Azure Holding since its formation.

73.     As a member-manager, Defendant was required to not usurp power or authority beyond its 50% membership interest.  By taking unilateral actions, the Defendant has breached his fiduciary duties of loyalty to Azure Holding.

74.     By failing to include Plaintiff Steimle, and his 50% controlling interest, in any company decisions since the company was formed, Defendant has further violated his fiduciary duties.

75.     To the extent any significant decisions or transactions are made after the above-captioned complaint is filed, each decision would be in further violation of Defendants' fiduciary duties to Azure Holding.  Further, any such decision would be a willful violation of those duties as Defendant is on notice that he cannot act unilaterally.

76.     Defendant is liable to Plaintiff and Azure Holding for each decision made in violation of their fiduciary duties owed the companies.

77.     Azure Holding and Steimle have been damaged by Defendant's unlawful takeover of the entities and through their unauthorized control over any decisions made.

78.     As a result of the Defendant's breaches of his fiduciary duties, the Plaintiff has and will suffer damages in excess of Five Hundred Thousand Dollars ($500,000.00).

## THIRD CAUSE OF ACTION:
## CONVERSION (Derivatively)

79.     Plaintiff, derivatively on behalf of and in the right of Azure Holding, incorporates herein by this reference paragraphs 1 through 78 of this Complaint as if set forth fully herein.

80.     Azure Holding, as the majority shareholder in Azure Renewables, owns an indirect 70% interest in Azure Development.

81.     Plaintiff Steimle has a 50% controlling interest in Azure Holding and therefore an indirect controlling interest in Azure Development, a wholly owned subsidiary of Azure Renewables.

82.     Defendant has converted Azure Renewables' interests in Azure Development by claiming exclusive control over the entity and its bank account.

83.     Defendant has also converted Azure Holding' bank account by not allowing Plaintiff Steimle any access to the account opened in its name.

84.     Plaintiff Steimle has also demanded that Defendant provide the organizational documents for Azure Development and he has refused.

85.     Defendant refused to allow Azure Development's activities to be controlled by and through the members of Azure Renewables.

86.     Defendant's conversion of Azure Holding's bank account has denied it the ability to participate in the management of its own financial affairs.  Further, Azure Holding has been denied the ability to exercise its controlling interest in Azure Development and has denied it access to information relating to the ongoing operations of the entities because the entity was created and formed contrary to the Parties' agreements.

87.     Azure Holding has suffered substantial damages, including the loss of any funds deposited with Azure Development, its future earnings or losses through Azure Development, and

control over the funds critical to the development of Azure Renewables.  Plaintiff is also entitled to punitive damages.

**FOURTH CAUSE OF ACTION:**
**BREACH OF CONTRACT (Individually and Derivatively)**

88.     Plaintiff, Steimle, individually and derivatively on behalf of and in the right of Azure Holding, incorporates herein by this reference paragraphs 1 through 87 of this Complaint as if set forth fully herein.

89.     Throughout Steimle's conversations with Defendant, it was agreed that Azure Holding would be a 50/50 member-managed LLC, and that upon its formation, Defendant would provide Plaintiff with a copy of the organizational documents.

90.     Throughout Steimle's conversations with Defendant, it was understood that Azure Development would pay for all the expenses incurred in the development of Azure Renewables, and that Steimle and Defendant would have equal say and control over the use of those funds by and through their indirect 70% ownership in Azure Renewables.

91.     When Defendant unlawfully began acting unilaterally on behalf of Azure Holding and Azure Development, he breached his agreement with both Plaintiffs.

92.     As a result of Defendant's breaches of the Parties' agreements, Plaintiffs have suffered substantial harm.

**FIFTH CAUSE OF ACTION:**
**OPPRESSION (Individually and Derivatively)**

93.     Plaintiff, Steimle, individually and derivatively on behalf of and in the right of Azure Holding, incorporates herein by this reference paragraphs 1 through 92 of this Complaint as if set forth fully herein.

94.     Pursuant to W.S. § 17-29-701(b), Defendant has acted, is acting, and will continue to act in a manner that is oppressive to Plaintiff's interests in Azure Holding and that are unlawful

and oppressive of Azure Holding' ability to operate in compliance with Wyoming law and to protect Azure Holding' interests in Azure Renewables and Azure Development.

95.     Rather than seeking dissolution, as allowed by statute, Plaintiff requests the Court award some remedy other than dissolution as the Court deems just and equitable; including converting Defendant's 50% interest in Azure Holding into an economic only interest – which would prevent him from ever acting unilaterally on behalf of Azure Holding.

<u>**SIXTH CAUSE OF ACTION:**</u>
<u>**FRAUD and CONSTRUCTIVE FRAUD (Individually and Derivatively)**</u>

96.     Plaintiff, Steimle, individually and derivatively on behalf of and in the right of Azure Holding, incorporates herein by this reference paragraphs 1 through 95 of this Complaint as if set forth fully herein.

97.     As more fully set forth above, Defendant was authorized by Azure Holding to form a new entity, at his request, for the purpose of holding any investor funds received on behalf of Azure Renewables.

98.     Plaintiffs relied upon Defendant's representations in consenting to the formation of Azure Development as a wholly owned subsidiary of Azure Renewables.

99.     Upon the Plaintiffs consenting to its formation, Defendant unilaterally acted to form the entity as a sole-member LLC with himself as its sole member.

100.     Defendant subsequently acted to open bank accounts in the name of Azure Holding and Azure Development with Defendant as the sole authorized signor on the accounts.

101.     Plaintiff Steimle has limited access to a single QuickBooks account that was set up by Defendant to keep track of transactions for all the entities, including Azure Holding, Development, and Renewables; however, Defendant has failed to provide Plaintiffs with any support for review or approval for the transactions Defendant initiated that are reflected within the QuickBooks file.

102.    Upon information and belief, Defendant requested authority to form Azure Development so that he could have exclusive control over funds intended to be used for the benefit of Azure Renewables and use that power and control to manipulate the operations of both Azure Holding and Azure Development.

103.    Upon information and belief, Defendant has used the Azure Development bank accounts to make distributions from which he personally benefits – all without any oversight from Azure Holding.

104.    Defendant has refused or otherwise failed to provide a full accounting for Azure Development and has not responded to Plaintiff Steimle's demand for an audit.

105.    Upon information and belief, Defendant has indicated he will not be retaining tax professionals to file taxes for funds received by Azure Development – causing Plaintiffs substantial concern with liability that might attached to Azure Holding for tax fraud or tax evasion.

106.    The Plaintiffs have suffered substantial harm in relation to the foregoing, including, among other things, the spending of funds without oversight or approval by Azure Holding.

## SEVENTH CAUSE OF ACTION:
## DECLARATORY JUDGMENT (Individually and Derivatively)

107.    Plaintiff, Steimle, individually and derivatively on behalf of and in the right of Azure Holding, incorporates herein by this reference paragraphs 1 through 106 of this Complaint as if set forth fully herein.

108.    Pursuant to W.S. § 17-29-901 and W.S. §§ 1-37-101 et. seq., this Court has jurisdiction to declare the rights, status, and other legal relations of the Parties.

109.    Plaintiffs seek to have the Court declare that Plaintiff is a 50% controlling member of Azure Holding.

110.    Plaintiffs seek to have the Court declare that Defendant is a 50% member of Azure Holding.

111.     In light of Defendant's oppressive conduct and violation of the Wyoming Limited Liability Company Act, Plaintiff Steimle requests the Court declare Defendant's 50% interest to be a non-controlling, economic interest in Azure Holding.

112.     Plaintiffs seek to have the Court declare that no action can be taken on behalf of Azure Holding while the above-captioned litigation progresses without the unanimous consent of all members, including any vote or action taken in relation to Azure Holding' 70% ownership interest in Azure Renewables.

113.     Plaintiff seeks to have the Court declare that any and all decisions made without including Plaintiff Steimle as a 50% controlling member are invalid and not enforceable.

### EIGHTH CAUSE OF ACTION:
### INJUNCTIVE RELIEF (Individually and Derivatively)

114.     Plaintiff, Steimle, individually and derivatively on behalf of and in the right of Azure Holding, incorporates herein by this reference paragraphs 1 through 113 of this Complaint as if set forth fully herein.

115.     Pending the resolution of this lawsuit, the Defendant must be constrained from taking any action without Plaintiff Steimle's consent.

116.     Pursuant to W.S. §§ 1-28-101 et. seq. this Court should enjoin the Defendant from interfering with Azure Holding' right to exercise control over Azure Development and its bank accounts.

117.     The Court should further enjoin Defendant from unilaterally voting Azure Holding' interests in Azure Renewables to remove Plaintiff Steimle as President of Azure Renewables.

**NINTH CAUSE OF ACTION:**
**BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**
**(Individually and Derivatively)**

118.    Plaintiff, Steimle, individually and derivatively on behalf of and in the right of Azure Holding, incorporates herein by this reference paragraphs 1 through 117 of this Complaint as if set forth fully herein.

119.    The Parties are bound by their oral agreements.

120.    Plaintiff Steimle has complied with the Parties' various agreements.

121.    The implied covenant of good faith and fair dealing requires that no party commit an act that would injure the rights of the other party to receive the benefit of their agreement.

122.    Defendant is required to act consistently with the agreed common purpose and justified expectations of the Plaintiffs.

123.    The Parties jointly undertook a business venture for the purpose of developing a technology to process an agricultural byproduct in Costa Rica, and Plaintiff Steimle has made substantial investments into the project.  For example, Steimle has moved to Costa Rica and has spent thousands of hours developing the intellectual property necessary for the venture to be a success.

124.    Plaintiff Azure Holding stands to make a substantial profit upon the project going beyond the development stage – including through the capture of carbon credits and the millions in potential profits from the sale of the product to be produced by Azure Renewables.

125.    By interfering with Plaintiff's ability to participate in the actions undertaken by Azure Holding, Defendant is intentionally attempting to create a situation where either the venture itself will fail (in which case Defendant would have sole access to all company funds) or where Plaintiff Steimle can no longer benefit from his involvement with Azure Holding – the 70% owner of Azure Renewables, which in turn wholly owns and controls Azure Development.

126.    Defendant agreed his role would be primarily limited to developing the investment and financial side of the businesses.

127.    Defendant is using his exclusive control and access to company funds to prevent payments from being made to Michael Steimle, and M3 Construction for work done on behalf of Azure Renewables, knowing this will directly impact Plaintiff Steimle's ability to meet his contractual obligations to Azure Renewables.

128.    Defendant is breaching his duty of good faith and fair dealing by failing to keep Plaintiff Steimle informed as to investments being made to Azure Development and communications with investors and potential investors.

129.    Upon information and belief, Defendant is making material misrepresentations and untruthful statements to investors and potential investors regarding Plaintiff Steimle for the purpose of garnering support against Plaintiff.

130.    For all the reasons set forth within this Complaint, Defendant has breached the duty of good faith and fair dealing.

131.    As a result of Defendants' breach of the covenant of good faith and fair dealing, Plaintiffs are being prevented from receiving any benefits under the various agreements controlling the Parties' relationships.

132.    Plaintiffs have suffered substantial harm through Defendants' unlawful takeover of Azure Holding, Azure Development, and attempted takeover of Azure Renewables.

**DAMAGES**

133.    As a result of Defendants' actions and activities, Plaintiffs have suffered damages in an amount exceeding Five Hundred Thousand Dollars ($500,000.00).

## <u>REQUEST FOR RELIEF</u>

WHEREFORE, Plaintiff Steimle, individually and derivatively on behalf of and in the right of Azure Holding, prays that the Court enter an Order and Judgment against Defendant for, in addition to all previous requests for relief:

1. All of Azure Holding' damages sustained as a result of Defendant's unlawful takeover, to include any lost profits and business opportunities;

2. Declaratory relief as set forth above;

3. An immediate injunction holding that Steimle is a controlling 50% member over Azure Holding, and enjoining Defendant from taking any unilateral action on behalf of Azure Holding or Azure Development;

4. All damages to be proven at trial; and

5. Any other and further relief the Court deems just and proper in the premises, including Plaintiffs' attorney fees and costs.

DATED this 7th day of April, 2024.

      _/s/ Robert J. Walker_____
      Robert J. Walker (7-4715)
      John M. Walker (5-2224)
      Walker Law, LLP
      114 East 7th Avenue, Suite 200
      P.O. Box 22409
      Cheyenne, WY   82003
      (307) 529-2255 telephone
      ATTORNEYS FOR PLAINTIFF

Robert J. Walker (#7-4715)
WALKER LAW
114 East 7th Ave., Suite 200
P.O. Box 22409
Cheyenne, WY   82003
Telephone: (307) 529-2255
Robert@WyoCounsel.com

*Attorney for Plaintiffs*

WY Chancery Court
May 07 2024 04:38PM
CH-2024-0000010
72935003
N/A
**FILED**



IN THE CHANCERY COURT, STATE OF WYOMING

| | | |
|---|---|---|
| MICHAEL STEIMLE, individually; | ) | |
| MICHAEL STEIMLE, derivatively on | ) | |
| behalf of and in the right of AZURE | ) | |
| HOLDING GROUP, LLC, a Wyoming | ) | |
| Limited Liability Company, | ) | |
| | ) | Case No. CH – 2024-0000010 |
| *Plaintiffs,* | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| ANDREW THOMPSON, individually; | ) | |
| | ) | |
| *Defendant.* | ) | |

## PRAECIPE FOR SUMMONS

The undersigned respectfully requests that the Clerk of the above-named Court issue a

Summons for the following persons:

**Andrew Thompson**
14109 Grand Traverse Drive
Charlotte, North Carolina 28278

1

DATED this 7th day of April, 2024.

_/s/ Robert J. Walker_____
Robert J. Walker (7-4715)
John M. Walker (5-2224)
Walker Law, LLP
114 East 7th Avenue, Suite 200
P.O. Box 22409
Cheyenne, WY   82003
(307) 529-2255 telephone

ATTORNEYS FOR PLAINTIFF

WY Chancery Court
May 07 2024 04:38PM
CH-2024-0000010
72935003
N/A

**FILED**



## IN THE CHANCERY COURT, STATE OF WYOMING

| | | |
|---|---|---|
| MICHAEL STEIMLE, individually; | ) | |
| MICHAEL STEIMLE, derivatively on | ) | |
| behalf of and in the right of AZURE | ) | |
| HOLDING GROUP, LLC, a Wyoming | ) | |
| Limited Liability Company, | ) | |
| | ) | Case No. CH – 2024-0000010 |
| *Plaintiffs,* | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| ANDREW THOMPSON, individually; | ) | |
| | ) | |
| *Defendant.* | ) | |

## SUMMONS

**TO:   Andrew Thompson**
14109 Grand Traverse Drive
Charlotte, North Carolina 28278

**YOU ARE HEREBY SUMMONED** and required to file with the Clerk and
serve upon Plaintiff's attorney an Answer to the Complaint, which is herewith served
upon you, within 20 days after service of this Summons on you, exclusive of the day
of service. (If service upon you is outside of the State of Wyoming, you are required to

1

file and serve your answer within 30 days after this Summons is served upon you, exclusive of the day of service.) If you fail to do so, judgment by default will be taken against you for the relief demanded in the Complaint.

**YOU ARE ADVISED** of W.R.C.P.Ch.C. 5(c)(2)'s electronic filing requirement:

(2) *How Filing Is Made--In General.* A document, including a case-initiating document, is filed by:

> (A) Electronically submitting it to the chancery court using the electronic filing system, and the electronic version shall be the officially filed document in the case. The current version of the chancery court e-filing training, policies and log-in can be found on the chancery court website, www.courts.state.wy.us/chancery-court/.

>> (i) Electronic filing must be completed within the time set forth in the Wyoming State Chancery Court Electronic Filing Administrative Policies and Procedures Manual to be considered timely filed on the date it is due. Electronic filing constitutes filing of a document.

>> (ii) When documents filed do not comply with the rules (such as the Rules Governing Redaction from Court Records), the document may be removed from the public docket and counsel will immediately be notified by email or through the electronic filing system and instructed to re-file the pleading within a specified amount of time. If the pleading is not correctly re-filed within the required time, it shall not be considered timely filed.

>> (iii) Documents filed by pro se litigants shall comply with the electronic filing requirements.

>> (iv) Paper filings shall not be accepted absent a prior order of the court. Any request to be excused from the electronic filing requirements must be timely presented and demonstrate exceptional cause for excusal.

> (B) Attachments to electronically filed documents may be scanned, however the document to which they are attached shall be uploaded directly from the filer's computer using the electronic filing system.

> (C) All pleadings shall be 8 ½ ″ x 11″. Any attachments or

appendices, which in their original form are larger or smaller, should be reduced or enlarged to 8 ½ ″ x 11″.

**(Seal of Chancery Court)**
**(Date of Issuance)**



05/07/2024

CH-2024-0000010

Gena Hansen
Clerk of Chancery Court

**CLERK OF CHANCERY COURT**

_/s/ Robert J. Walker_____
Robert J. Walker (7-4715)
John M. Walker (5-2224)
Walker Law, LLP
114 East 7th Avenue, Suite 200
P.O. Box 22409
Cheyenne, WY   82003
(307) 529-2255 telephone

ATTORNEYS FOR PLAINTIFF

3

Robert J. Walker (#7-4715)
WALKER LAW
114 East 7th Ave., Suite 200
P.O. Box 22409
Cheyenne, WY  82003
Telephone: (307) 529-2255
Robert@WyoCounsel.com

*Attorney for Plaintiffs*

WY Chancery Court
May 09 2024 03:55PM
CH-2024-0000010
73014843
N/A
**FILED**

### IN THE CHANCERY COURT, STATE OF WYOMING

| | | |
|---|---|---|
| MICHAEL STEIMLE, individually; | ) | |
| MICHAEL STEIMLE, derivatively on | ) | |
| behalf of and in the right of AZURE | ) | |
| HOLDING GROUP, LLC, a Wyoming | ) | |
| Limited Liability Company, | ) | |
| | ) | Case No. CH – 2024-0000010 |
| *Plaintiffs,* | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| ANDREW THOMPSON, individually; | ) | |
| | ) | |
| *Defendant.* | ) | |

---

### PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

---

COME NOW, Michael Steimle ("Steimle" or "Plaintiff"), both individually and

derivatively on behalf of and in the right of Azure Holding, LLC ("Azure Holding"), a Wyoming

Limited Liability (collectively referred to hereafter as the "Plaintiffs"), and for their Motion for Preliminary Injunction plead and allege as follows:

## INTRODUCTION

Michael Steimle's individual business interests in Azure Holding and indirectly in Azure Renewables S.S. ("Azure Renewables"), a Costa Rican "Sociedad Anonima" are being irreparably harmed, and the operations of Azure Holding is also being irreparably harmed by the unlawful actions of the Defendant, Andrew Thompson ("Defendant").

Michael Steimle is a 50% owner of Azure Holding, which owns and controls 70% of Azure Renewables. Further, Azure Development LLC ("Azure Development"), is a Delaware LLC that was to be wholly owned by Azure Renewables as the entity through which Azure Renewables would conduct its financial transactions.

Azure Holding is a member-managed LLC; however, the Defendant has been acting and has threatened to continue to act unilaterally on behalf of Azure Holding without complying with any corporate formalities or complying with the Wyoming Limited Liability Company Act.

Specifically, upon information and belief, the Defendant is actively attempting to call a meeting of Azure Renewables, on behalf of Azure Holding, wherein he intends to unilaterally use the 70% vote of Azure Holdings to remove the Plaintiff, Steimle, from his position as President of Azure Renewables. As 50% owner and member-manager of Azure Holding, Plaintiff Steimle does not consent to and has not approved of this action.

Further, the Defendant has taken exclusive possession and control over the bank account for Azure Holding and has failed to provide any supporting documentation for any transactions he has undertaken on behalf of Azure Holding or Azure Renewables. Without Court intervention, Defendant will not recognize Plaintiff Steimle's 50% controlling interest in Azure Holding, and

Plaintiff will be at the mercy of any unilateral actions taken by Defendant – including him actively attempting to remove Plaintiff from his role with Azure Renewables.

The Defendants actions preventing Plaintiff Steimle from participating in the operations of Azure Holdings or those entities in which it owns a directly or indirectly controlling interest will cause irreparable harm, including the likely failure of the businesses.

Upon information and belief, the Defendant has undertaken his unlawful takeover of the entities so he can personally benefit from business opportunities intended for the members of Azure Holding and Azure Renewables, to the detriment of the entities.

The Plaintiffs seek immediate relief for the Defendants' gross deviations from their obligations under the Wyoming Limited Liability Company Act, and requests the Defendant be ordered to:

1. Restore all rights and privileges to Plaintiff as a 50% owner of Azure Holding;

2. Prevent Defendant from taking any unilateral action or vote in relation to Azure Holding's interest in Azure Renewables;

3. Order that, during the pendency of the above-captioned matter, any action on behalf of Azure Holding be undertaken only with the unanimous vote or consent of the members; and

4. Immediately provide Plaintiff Michael Steimle with copies of all business records of Azure Holding – something he has refused to do.

## STATEMENT OF RELEVANT FACTS

In 2022, Steimle and the Defendant began the joint development of a business model that, very generally, would process an agricultural byproduct common in Costa Rica.  Steimle's role was primarily to use his engineering, construction, and project management background to develop

the intellectual property necessary to process the byproduct, and to develop that technology. Defendant's role was primarily to work with investors and to assist in providing and finding funding for the project. Defendant was also responsible for forming the various legal entities pursuant to the business model agreed upon by Steimle and the Defendant.

So, on or about June 8, 2022, Defendant formed Azure Holding in Wyoming. Azure Holding is a member-managed LLC with both Defendant and Steimle owning an equal 50% controlling interest in the company. Steimle was never provided any operating agreement for Azure Holding, has never seen an operating agreement for Azure Holding, and never consented to or in any way approved any operating agreement for Azure Holding.

Then, on or about July 26, 2022, Steimle and Defendant jointly formed and created Azure Renewables in Costa Rica. Azure Holding is presently the 70% owner of Azure Renewables.

Next, Defendant formed Azure Development on or about February 27, 2023. Defendant explained he wanted to form Azure Development to be the operations company that would control and track the financials of the development of Azure Renewables. Upon information and belief, Azure Renewables consented to the formation of Azure Development as its wholly owned subsidiary. Upon information and belief, Defendant set up Azure Development as a sole-member LLC; however, with him individually as its sole owner rather than Azure Renewables as directed.

Defendant also set up bank accounts for Azure Holding, Azure Renewables, and Azure Development. Plaintiff Steimle has equal access and control over the Azure Renewables account, very limited access to the Azure Development account, and no access or control over the Azure Holding account. Plaintiff Steimle has access to the QuickBook account that records the transactions of all three accounts, within a single file, but Defendant has refused to provide Steimle with any supporting documents for any transactions initiated by Defendant. Upon information and

belief, Defendant is undertaking transactions for his personal gain and the personal gain of those he perceives to be in "his camp."

Defendant has been inconsistent in the use of the accounts for payments and deposits. There are times when Defendant pays invoices from Azure Development, and later the same vender is paid from Azure Holding' account. Similarly, some venders are now paid from Azure Renewables when payments used to come from Azure Holding. It is unclear why Defendant makes transfers between the three separate accounts. Plaintiffs are concerned with the many federal tax issues that could arise from maintaining improper or unlawful accountings and that Defendant is intentionally failing to maintain the companies' books in accordance with the accepted or reasonable accounting standards.

Upon information and belief, Defendant has used the three accounts to hide the transparency of his transactions; and that he uses the Azure Holding account for any hidden transactions because no other individual has oversight over that account. Defendant routinely initiates transactions for all three bank accounts without consulting with or seeking permission from Azure Holding or Azure Development.

On or about April 12, 2024, Steimle, through his counsel, sent a demand letter requesting, among other things, that:

a. The financials of Azure Development and Azure Renewables be audited and presented at the annual shareholder meeting for Azure Renewables;

b. Copies of the operating agreements, and related organizational documents, for Azure Holding and Azure Development be provided;

c. Steimle be included, in his role as President of Azure Renewables, in all future meetings with investors, investment banks, and any others doing business with the companies.

d. Copies of documentation or support showing reimbursements to Defendant and the Secretary of Azure Renewables, Kevin Tangen.

     e.  Defendant cease from engaging with third parties on behalf of the jointly owned entities without following through with corporate formalities and consulting with Steimle.

Since the demand letter was sent, Defendant has refused or otherwise failed to provide any supporting documentation for substantial payments made from Azure Development and Azure Holding to Defendant, third parties, and Kevin Tangen.  Defendant has also delayed payments to M3 Construction, out of the bank accounts, for labor already executed for the benefit of Azure Renewables, while not delaying payment to his preferred vendors.

Defendant has also delayed project development payments to Michael Steimle, out of the Azure accounts, for ongoing project development services being executed for the benefit of Azure Renewables, while not delaying payment to Defendant, Kevin Tangen, and Defendants preferred vendors.

Defendant has also failed to consult with Azure Renewables generally, or Steimle relating to the status of ongoing investment opportunities; and has generally failed to secure new investment as needed to complete the development of the companies' projects.  Defendant has also refused or otherwise failed to provide any of the operating agreements or organizational documents for Azure Holding or Azure Development as required.

Additionally, Defendant has implied through various communications that he intends to hold a shareholder meeting for Azure Renewables where he intends to use Azure Holding' 70% vote to remove Steimle from his role as President of Azure Renewables.  However, Azure Holding, the Wyoming LLC, has had no membership meetings in relation to its controlling interests in Azure Renewables, and Plaintiff Steimle, as a 50% controlling member, does not consent to Defendant unilaterally using or voting Azure Holding' controlling interests in Azure Renewables.

As a 50/50 member-managed LLC, any actions taken by Azure Holding could only be approved unanimously by each member.  Upon information and belief, Defendant intends to act unilaterally to remove Steimle from his role as President of Azure Renewables, in part, so that he can continue his activities without the oversight and transparency Steimle has demanded.

### LAW AND ARGUMENT

There is no provision within the Wyoming Limited Liability Company Act or any implied Operating Agreement that would allow the Defendant to act unilaterally on behalf of Azure Holding, a 50/50 member-managed Wyoming Limited Liability Company.

The Court must protect Plaintiff's economic and controlling interests in Azure Holding and indirect controlling interest in Azure Renewables (through Azure Holding's 70% ownership of that entity), which will be irreparably harmed by Plaintiff Steimle's unlawful exclusion from company decisions.  Plaintiff has done nothing to harm or interfere with the Defendant's interests in either Azure Holding or Azure Renewables and has only requested they comply with their own obligations towards those entities.

The purpose of a restraining order or a preliminary injunction is to preserve the status quo until the rights of the parties can be fairly inquired into and determined under equitable conditions and principles.  *Simpson v. Petroleum, Inc.*, 548 P.2d 1, 2 (Wyo. 1976) (*citing Weiss v. State ex rel. Danigan*, 434 P.2d 761, 762 (Wyo. 1967).  For the purposes of the present Motion, Plaintiff requests that the Court prohibit Defendant from taking any unilateral action in relation to  Azure Holding's 70% voting/controlling interest in Azure Renewables.  Further, Plaintiff requests that the Court order that Defendant not undertake any transactions out of any bank account controlled by Azure Holding without the unanimous consent of its members.  Plaintiff's 50% controlling

interest in Azure Holding must be fully restored and protected during the pendency of this litigation.

## 1.      Standard for Granting Injunctive Relief.

Actions for injunctive relief are, by nature, requests for equitable relief that are within a court's equitable discretion. *Wilson v. Lucerne Canal & Power Co.*, 2003 WY 126, ¶ 8, 77 P.3d 412, 416 (Wyo. 2003) (*quoting Weiss v. Pedersen,* 933 P.2d 495, 498 (Wyo. 1997) (*abrogated on other grounds, White v. Allen,* 2003 WY 39, ¶¶ 10–11, 65 P.3d 395, ¶¶ 10–11 (Wyo. 2003); *citing Rialto Theatre, Inc. v. Commonwealth Theatres, Inc.,* 714 P.2d 328, 332 (Wyo. 1986)). Injunctions are extraordinary remedies and are not granted as of right. In granting an injunction, the court exercises broad, equitable jurisdiction. *Polo Ranch Co. v. City of Cheyenne*, 2003 WY 15, ¶ 25, 61 P.3d 1255, 1263-64 (Wyo. 2003) (*citing Brown v. J.C. Penney Co.*, 54 F. Supp. 488 (Dist. Ct. (Wyo.) 1943)).

Wyoming Statute § 1-28-102 further clarifies the standard for the issuance of a temporary or preliminary injunction:

> When it appears by the petition that the plaintiff is entitled to relief consisting of restraining the commission or continuance of some act the commission or continuance of which during the litigation would produce great or irreparable injury to the plaintiff, ***or when during the litigation it appears that the defendant is doing, threatens to do, or is procuring to be done some act in violation of the plaintiff's rights respecting the subject of the action and tending to render the judgment ineffectual, a temporary order may be granted restraining the act.***

(emphasis added).

In *Weiss v. Pedersen,* 933 P.2d 495, 498-99 (Wyo. 1997) (*quoting Gregory v. Sanders,* 635 P.2d 795, 801 (Wyo. 1981)), the Wyoming Supreme Court recognized:

> Injunctions are issued when the harm is irreparable and no adequate remedy at law exists. Injunctive relief is appropriate when an award of money damages cannot provide adequate compensation. An injury is irreparable where it is of a peculiar nature, so that compensation in money cannot atone for it.

*Polo Ranch Co. v. City of Cheyenne*, 2003 WY 15, ¶ 26, 61 P.3d 1255, 1264 (Wyo. 2003) (internal citations omitted).

In *Rialto*, the Court also revisited the rule in Wyoming that injunctive relief may be an appropriate remedy to "restrain the breach of contract". *Rialto Theatre, Inc.* 714 at 333 (*citing Cody Community Television Corp. v. Way,* 356 P.2d 1113, 1116 (Wyo. 1960). The Wyoming Supreme Court has recognized:

> A court of equity will endeavor, to the extent of its powers, to bind men's consciences so far as they can be bound to ***a true and literal performance of their agreements***, and will not suffer them to depart from their contacts at pleasure, leaving the party with whom they have contracted to the mere chance of any damages which a jury may give. It will, therefore, in a proper case, ***enforce a contract by enjoining violations of the terms thereof***, notwithstanding the nature of the contract may be such that specific performance thereof could not be enforced.

*Cody Community Television Corp.*, 356 P.2d at 1116 (emphasis added). The granting of preliminary injunctive relief to enforce a contract comports with sound public policy in that:

> It would be foolhardy to require that before the granting of an injunction that there be actual physical violence in order to constitute the threat of interference with another's right enforceable by way of the extraordinary remedy of injunction. One does not have to await the consummation of threatened injury to obtain preventative relief. Injunctive relief is designed not to deal with past violations, but to avoid future wrongs. If injury is certainly impending, that is enough. Prevention of impending future injury is a recognized function of a court of equity.

*Rialto Theater, Inc.*, 714 P.2d at 333 *(quoting Reno Livestock Corporation v. Sun Oil Company (Delaware),* 638 P.2d 147, 153 (Wyo. 1981)).

In this case, Plaintiff requests the Court enforce the clear and unequivocal terms of the Wyoming Limited Liability Company Act as it relates to the controlling interests of members within a member-managed LLC.

**2.      A Preliminary Injunction is Necessary to Prevent Defendant from Causing Irreparable Future Damage to Plaintiff Steimle's Interests in the Company.**

Plaintiff requests that a hearing be set for the issuance of a preliminary injunction.  Pursuant to Wyo. R. Civ. P. C.C. 65(a)(1), no preliminary injunction shall be issued without notice to the adverse party.  Further:

Pursuant to Wyo. R. Civ. P. C.C. 65(a)(2), the Court also has discretion to consolidate the trial of the action on its merits with a motion for injunctive relief.  However, Plaintiff requests that the Court not accelerate the trial schedule so that further discovery into the financial affairs and recent activities of the business might be undertaken.

The Court's intervention and granting of a preliminary injunction restoring Plaintiff's rights and authorities in Azure Holding during the pendency of this action is both necessary and appropriate under Rule 65(b) and Wyo. Stat. Ann. § 1-28-102.  The Defendant has acted and continues to act in an oppressive manner that is or will be harmful to the Plaintiffs' interests. Plaintiff, Michael Steimle, will be prevented from exercising his substantial rights under the Wyoming Limited Liability Company Act during the pendency of this action without Court intervention.

In Wyoming, the legislature has intended that a member's management rights within a limited liability company be protected and honored as the parties intended at the time they filed their initial articles of organization.  *See generally In re Kite Ranch, LLC*, 2010 WY 83 (holding that the parties' implied operating agreement was binding, and that management was conferred upon the members as contemplated at the time the entity's articles or organization were filed); W.S. § 17-29-111 (stating that a limited liability company is bound by its operating agreement); and W.S. § 17-29-407 (requiring that a limited liability company be member-managed unless an

operating agreement states otherwise; and that in member-managed LLCs each member has equal rights in the management and conduct of the company's activities).

Any actions taken on behalf of an LLC without proper authority would be void.  *See Mont. Food, LLC v. Todosijevic*, 2015 WY 26 (finding that when two members both owned 50% of an LLC, neither individual had the authority to unilaterally adjust membership interests).

Under the circumstances that exist, irreparable harm will continue to occur if sufficiently tailored injunctive relief is not imposed upon the Defendant.  Therefore, injunctive relief should be imposed preventing any unilateral actions by Defendant to vote or act on Azure Holding's 70% interest in Azure Renewables, to invalidate any unilateral decisions made by Defendant in relation to Azure Holding or its bank account, to require Defendant to turn over any corporate documents or records to Plaintiffs, to account for any funds spent out of any account controlled directly or indirectly by Azure Holding, and to require that Plaintiff Michael Steimle be included in any decisions or actions taken or made on behalf of Azure Holding.

**3.      Form and Scope of Order.**

Wyo. R. Civ. P. C. C. Rule 65(d) states in pertinent part that every order granting an injunction and every restraining order shall set forth:

(1) the reasons for its issuance;

(2) shall be specific in terms; and

(3) shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained. . . ."

Accordingly, it is respectfully requested that the Court find Plaintiffs will suffer immediate, great, and irreparable harm and damage in the event that the Defendant excludes Plaintiff from exercising his rights and powers under the implied Operating Agreement as a member of Azure Holding, as was agreed to.  Plaintiff further requests that the Court find that an award of money

damages cannot provide adequate compensation for the loss of Plaintiff's ability to exercise those rights in relation to Azure Holding's current and future business dealings.  As a start-up company in the early developmental stages of the business, if Plaintiff Michael Steimle is not included in critical investment or development discussions, it could easily result in the collapse of the business and all parties losing the opportunity to receive the contemplated benefits of their business dealings.

As to the acts to be restrained, Plaintiff asks that the Defendant and legal counsel for the Defendant be ordered, for the remainder of this litigation, to:

> (1)  Restore all rights and privileges to Plaintiff under the Wyoming Limited Liability Company Act and implied Operating Agreement, specifically including Steimle's right to have a 50% vote in any decisions made on behalf of Azure Holding LLC;

> (2) Prevent any action or vote on behalf of Azure Holding's 70% interest in Azure Resources without Plaintiff's written consent;

> (3) Provide Plaintiff with copies of all existing financial statements of the Company as well as any supporting documents for any financial transactions undertaken using funds controlled in any way by Azure Holding;

> (4)  Grant Plaintiff access to all Company documents; and

> (5)  Order that no action be taken on behalf of Azure Holding during the pendency of the above-captioned litigation without Plaintiff Michael Steimle's written consent..

Not only does Rule 65 of the Wyo. R. Civ. P. C.C. require this level of specificity, it also assures that the business interests of Plaintiffs are adequately protected.

## 4.      Any Bond Should be Minimal.

Finally, any bond, as required by Wyo. R. Civ. P. C.C. 65(c), should be minimal, as Plaintiffs are merely seeking to preserve the status quo.  Rule 65(c) provides that the Chancery Court may issue a preliminary injunction only if the movant gives security in an amount that the

Court considers proper to pay any damages sustained by any party found to have been wrongfully restrained.

Here, no injury could befall Defendant by merely requiring it to abide by the implied Operating Agreement and the Wyoming Limited Liability Company Act. Plaintiffs are not asking for anything not already required by Wyoming law. By providing Plaintiff, Michael Steimle with the opportunity to communicate his opinions in relation to any and all business decisions, the Court would be preventing Defendant from acting unilaterally to the detriment of Plaintiffs – something he has no lawful right to do.

The Court accordingly should require a bond of no more than $500.00.

## CONCLUSION

WHEREFORE, Plaintiff respectfully requests and prays that the Court grant a preliminary injunction as set forth above; and for such other and further relief the court deems just and equitable.

DATED this 9th day of May, 2024.

        /s/ Robert J. Walker
        Robert J. Walker (7-4715)
        John M. Walker (5-2224)
        Walker Law, LLP
        P.O. Box 22409
        Cheyenne, WY   82003
        (307) 529-2255 telephone

        ATTORNEYS FOR PLAINTIFF

## **CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the foregoing document was served upon the Defendant

in this matter, on this 9th day of May, 2024, via US Mail as follows:

**Andrew Thompson**
14109 Grand Traverse Drive
Charlotte, North Carolina 28278

/s/ Robert J. Walker
Walker Law, LLP

**IN THE CHANCERY COURT, STATE OF WYOMING**

Michael Steimle et al.

      Plaintiff,

v.

Andrew Thompson

      Defendant.

Case No. CH-2024-0000010

WY Chancery Court
May 16 2024 01:32PM
CH-2024-0000010
73083916
N/A

**FILED**

---

### Notice of Judge Assignment

---

    This case has been assigned to the Honorable Steven K Sharpe for all purposes.

    Dated:  05/16/2024

               /s/ Gena Hansen
               Clerk, Chancery Court

**AFFIDAVIT OF SERVICE**

| Case:<br>CH – 2024-0000010 | Court:<br>In the Chancery Court | State:<br>WY | Job:<br>11046920 |
|---|---|---|---|
| Plaintiff / Petitioner:<br>MICHAEL STEIMLE, individually; ) MICHAEL STEIMLE, derivatively on ) behalf of and in the right of AZURE ) HOLDING GROUP, LLC, a Wyoming ) Limited Liability Company | | Defendant / Respondent:<br>ANDREW THOMPSON | |
| Received by:<br>Method Process | | For:<br>Walker Law | |
| To be served upon:<br>ANDREW THOMPSON | | | |

WY Chancery Court
May 21 2024 12:37PM
CH-2024-0000010
73133705
N/A
**FILED**

I, Rick Francis, being duly sworn, depose and say: I am over the age of 18 years and not a party to this action, and that within the boundaries of the state where service was effected, I was authorized by law to make service of the documents and informed said person of the contents herein

**Recipient Name / Address:**   ANDREW THOMPSON, 14109 Grand Traverse Drive, Charlotte, NC 28278
**Manner of Service:**   Personal/Individual, May 14, 2024, 12:58 pm EDT
**Documents:**   Summons & Complaint

**Additional Comments:**
1) Successful Attempt: May 14, 2024, 12:58 pm EDT at 14109 Grand Traverse Drive, Charlotte, NC 28278 received by ANDREW THOMPSON.

_____   5/14/24                    Subscribed and sworn to before me by the affiant who is
Rick Francis                  Date                     personally known to me.

Method Process                                          _____
4100 Carmel Rd. Suite #277                              Notary Public
Charlotte, NC 28226                                     5/14/24              11/10/27
(704) 951-4057                                          Date          Commission Expires



Robert J. Walker (#7-4715)
WALKER LAW
114 East 7th Ave., Suite 200
P.O. Box 22409
Cheyenne, WY  82003
Telephone: (307) 529-2255
Robert@WyoCounsel.com

*Attorney for Plaintiffs*

WY Chancery Court
May 29 2024 04:34PM
CH-2024-0000010
73261390
N/A

**FILED**

IN THE CHANCERY COURT, STATE OF WYOMING

MICHAEL STEIMLE, individually;           )
MICHAEL STEIMLE, derivatively on        )
behalf of and in the right of AZURE        )
HOLDING GROUP, LLC, a Wyoming    )
Limited Liability Company,                      )
                                                                )        Case No. CH – 2024-0000010
            *Plaintiffs,*                                      )
                                                                )
vs.                                                              )
                                                                )
ANDREW THOMPSON, individually;      )
                                                                )
            *Defendant.*                                     )

---

**PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER**

---

COME NOW, Michael Steimle ("Steimle" or "Plaintiff"), both individually and

derivatively on behalf of and in the right of Azure Holding, LLC ("Azure Holding"), a Wyoming

Limited Liability (collectively referred to hereafter as the "Plaintiffs"), and for their Motion for Temporary Restraining Order plead and allege as follows:

**INTRODUCTION**

On or about May 9, 2024, Plaintiffs filed their Motion for Preliminary Injunction.  Plaintiffs were concerned that the Defendant, Andrew Thompson ("Defendant") was acting unilaterally in relation to Azure Holding despite only owning a 50% interest in the company, a member-managed LLC.

Plaintiffs were specifically concerned that the Defendant was preparing to hold a meeting of Azure Renewables S.A. ("Azure Renewables"), a Costa Rican "Sociedad Anonima" where he planned to use the 70% controlling vote of Azure Holding to remove Plaintiff Steimle as President of Azure Renewables.  No meeting has ever been held by Azure Holding to discuss its governing and controlling interest in Azure Renewables, or the business affairs of Azure Renewables.

The complaint in the above-captioned matter was served to Defendant at his home on May 14, 2024, making his answer deadline June 13, 2024.  A copy of the Motion for Preliminary Injunction was sent to the Defendant at his home address on May 9, 2024.

Notwithstanding, on or about May 15, 2024, the day after he was served, Defendant unlawfully and without authority from Azure Holding attended and participated in a meeting of shareholders for Azure Renewables and voted on behalf of Azure Holding to remove Plaintiff Steimle as President of Azure Renewables and to appoint Kevin Tangen as its president.  No notice of meeting was ever provided to Plaintiffs.  Plaintiffs have become aware of the actions as the meeting minutes of Azure Renewables are publicly filed in Costa Rica.

Since that time, Plaintiff Steimle has been cut off from all communications relating to Azure Renewables, Azure Development, and Azure Holdings.  Furthermore, it appears that the

Defendant has sent communications to all those individuals and businesses who are doing business with Azure Renewables, informing them of his action to remove Plaintiff Steimle – permanently damaging his reputation with all those with whom he has conducted business.

Additionally, there is substantial concern that Defendant has no limitation or restriction in Costa Rica's official business records for Azure Renewables that would prevent him from selling or diluting Azure Holding's interests – permanently and irreparably damaging the Plaintiffs' interests in Azure Renewables.

The harm that will be caused by these actions, if continued, would be irreparable.  Plaintiff Steimle had moved to Costa Rica to actively manage and participate in the operations of Azure Renewables.  Plaintiff Steimle, and his business M3 Construction, have also incurred substantial expenses in shifting nearly 100% of their active workload to servicing the Azure Renewables project.  Defendant's actions have not only eliminated Plaintiff's ability to actively manage and participate in the business of Azure Holding and Azure Renewables, but Defendant's unlawful actions, in effect, squeezed Plaintiff Steimle out of his livelihood.  This appears to be Defendant's intent.  Plaintiff's status and ability to reside and work in Costa Rica might be irreparably harmed as well, given that he is no longer President on the official books of Azure Renewables.  Attached hereto and incorporated herein as ***Exhibit 1*** is the Affidavit of Michael Steimle, which provides the testimony and evidence in support of Plaintiff's position, the facts set forth herein, and the dire situation necessitating the presently requested relief.

Significantly, it is Plaintiff's understanding that a Costa Rican court cannot unwind the Defendant's unlawful unilateral transaction as it has no authority to determine who has the right to attend meetings or vote on behalf of Azure Holding.  It is ONLY through an order in Wyoming that the Defendant's unilateral actions on behalf of Azure Holding can be unwound.  Additionally,

Counsel for the Plaintiff understands that any challenge to Defendant's unlawful actions must be brought within ninety (90) days – making direction from the Court all the more urgent.

Without some direction from a Wyoming Court, there can only be confusion.  For example, under Defendant's logic, there is nothing stopping Plaintiff Steimle from calling a meeting of Azure Renewables on behalf of Azure Holding and using Azure Holding's 70% controlling interest to reappoint himself as President and remove Defendant and his friends from any role within the Azure Renewables.  Then the two parties could waffle the control of the company in perpetuity – an absurd outcome.  Rather than taking the "two-wrongs-make-a-right-approach", Plaintiff seeks to honor this Court's authority and maintain his own integrity by acting in accordance with the spirit and letter of the Wyoming Limited Liability Company Act.

Of perhaps greatest concern is that Defendant has exclusive access and control over Azure Holding's bank account, as well as the other bank accounts indirectly controlled by Azure Holding in the names of Azure Development and Azure Renewables.  Given this is an international enterprise, there is substantial concern that Defendant will transfer all the funds out of these accounts into an overseas account – causing additional irreparable harm to the Plaintiffs.

Unless and until the Court intervenes, the Defendant's unlawful "mutiny" will give him exclusive access to all of Azure Renewables' bank accounts, contractors, investors, venders, and other interested parties.  By making unauthorized communications to these individuals and entities, allegedly on behalf of Azure Holding, Defendant can create further irreparable barriers to Plaintiff ever being able to resume his role as President.

Finally, because Defendant has unilateral access and control over the Azure Holding bank account, he is controlling what goes in and comes out of that account.  Without proper oversight and funding to the Azure Renewables project, it could fall behind on its commitments and die in

its infancy – eliminating the possibility of any of Azure Holding's members ever receiving any profit.  Given that the project has not yet commenced its operations and has not sold any carbon credits (which could be valued in the many millions of dollars) – it would be difficult or impossible to quantify the damages that would be caused by the untimely death of the project.

## LAW AND ARGUMENT

The foundation for all business entities requires that their owners comply with those rules of decision making the founders agreed to at the creation of the venture.  Those agreements, in conjunction with the Wyoming Limited Liability Company Act, exclusively give the members the authority to act for a Wyoming limited liability company.

Neither Wyoming statutory nor common law allows a 50/50 member of a member-managed LLC to act unilaterally – especially when the other member expressly opposes the contemplated action because it would be to his exclusive detriment.  This principle is especially important when the members are fighting or are otherwise at an impasse.  Were it otherwise, both members could resort to self-help - figuratively grabbing for control over the "helm" of the business simultaneously – potentially directing the business in catastrophically inconsistent directions.

In this case, the Defendant has wholly abandoned any pretense of following these governing rules and principles.  If he continues to exercise unrestricted control over Azure Holding and uses that stolen authority to exert exclusive control over Azure Renewables; there will likely be nothing for Plaintiff to come back to at the end of the litigation – regardless of the outcome.

The purpose of a restraining order or a preliminary injunction is to preserve the status quo until the rights of the parties can be fairly inquired into and determined under equitable conditions

and principles. *Simpson v. Petroleum, Inc.*, 548 P.2d 1, 2 (Wyo. 1976) (*citing Weiss v. State ex rel. Danigan*, 434 P.2d 761, 762 (Wyo. 1967).

For the purposes of the present Motion, Plaintiff requests that the Court immediately enter the following relief, which would stay in effect until the Court can have a hearing on Plaintiff's motion for preliminary injunction: (1) Plaintiff must immediately be given equal administrative access to the Azure Holding bank account at Bank of America, and any other bank in which Defendant might have set up an account, as well as equal access to any and all financial records being maintained on behalf of Azure Holding; (2) Defendant must immediately call a meeting of Azure Renewables and vote Azure Holding's 70% controlling interest in that company to unwind any and all actions taken by Defendant without Plaintiff's consent, and if Defendant fails to do so, authorizing Plaintiff Steimle to call a meeting of Azure Renewables on behalf of the Azure Holding's 70% controlling interest in that company to unwind any and all actions taken by Defendant without Plaintiff's consent; (3) the Defendant must be ordered to cease any and all unilateral communications and activities on behalf of Azure Holding or in relation to Azure Renewables, and must copy Plaintiff on any and all communications to or from Azure Renewables; (4) Defendant must immediately freeze any and all transactions to or from Azure Holding's bank account or the Azure Development bank account unless Plaintiff has consented to and authorize those transactions; (5) The Defendant must be ordered to not use Azure Holding's 70% vote to carry out or approve acts of disposition of the Assets of Azure Renewables, such as but not limited to selling or encumbering assets or selling or diluting stock, without Plaintiff's prior written consent; and (6) Defendant must be ordered to refrain from taking any future action on behalf of Azure Holding, unless Defendant has received written consent from Plaintiff Steimle authorizing

such actions, specifically including any future actions on behalf of Azure Holding as the 70% shareholder of Azure Renewables.

1.      **Standard for Granting Injunctive Relief.**

Actions for injunctive relief are, by nature, requests for equitable relief that are within a court's equitable discretion. *Wilson v. Lucerne Canal & Power Co.*, 2003 WY 126, ¶ 8, 77 P.3d 412, 416 (Wyo. 2003) (*quoting Weiss v. Pedersen,* 933 P.2d 495, 498 (Wyo. 1997) (*abrogated on other grounds, White v. Allen,* 2003 WY 39, ¶¶ 10–11, 65 P.3d 395, ¶¶ 10–11 (Wyo. 2003); *citing Rialto Theatre, Inc. v. Commonwealth Theatres, Inc.,* 714 P.2d 328, 332 (Wyo. 1986)). Injunctions are extraordinary remedies and are not granted as of right. In granting an injunction, the court exercises broad, equitable jurisdiction. *Polo Ranch Co. v. City of Cheyenne*, 2003 WY 15, ¶ 25, 61 P.3d 1255, 1263-64 (Wyo. 2003) (*citing Brown v. J.C. Penney Co.*, 54 F. Supp. 488 (Dist. Ct. (Wyo.) 1943)).

Wyoming Statute § 1-28-102 further clarifies the standard for the issuance of a temporary or preliminary injunction:

> When it appears by the petition that the plaintiff is entitled to relief consisting of restraining the commission or continuance of some act the commission or continuance of which during the litigation would produce great or irreparable injury to the plaintiff, *or when during the litigation it appears that the defendant is doing, threatens to do, or is procuring to be done some act in violation of the plaintiff's rights respecting the subject of the action and tending to render the judgment ineffectual, a temporary order may be granted restraining the act.*

(emphasis added).

In *Weiss v. Pedersen,* 933 P.2d 495, 498-99 (Wyo. 1997) (*quoting Gregory v. Sanders,* 635 P.2d 795, 801 (Wyo. 1981)), the Wyoming Supreme Court recognized:

> Injunctions are issued when the harm is irreparable and no adequate remedy at law exists. Injunctive relief is appropriate when an award of money damages cannot provide adequate compensation. An injury is irreparable where it is of a peculiar nature, so that compensation in money cannot atone for it.

*Polo Ranch Co. v. City of Cheyenne*, 2003 WY 15, ¶ 26, 61 P.3d 1255, 1264 (Wyo. 2003) (internal citations omitted).

The Court also revisited the rule in Wyoming that injunctive relief may be an appropriate remedy to "restrain the breach of contract". *Rialto Theatre, Inc.* 714 at 333 (*citing Cody Community Television Corp. v. Way,* 356 P.2d 1113, 1116 (Wyo. 1960). The Wyoming Supreme Court has recognized:

> A court of equity will endeavor, to the extent of its powers, to bind men's consciences so far as they can be bound to ***a true and literal performance of their agreements***, and will not suffer them to depart from their contacts at pleasure, leaving the party with whom they have contracted to the mere chance of any damages which a jury may give. It will, therefore, in a proper case, ***enforce a contract by enjoining violations of the terms thereof***, notwithstanding the nature of the contract may be such that specific performance thereof could not be enforced.

*Cody Community Television Corp.*, 356 P.2d at 1116 (emphasis added).

The granting of preliminary injunctive relief to enforce a contract comports with sound public policy in that:

> It would be foolhardy to require that before the granting of an injunction that there be actual physical violence in order to constitute the threat of interference with another's right enforceable by way of the extraordinary remedy of injunction. One does not have to await the consummation of threatened injury to obtain preventative relief. Injunctive relief is designed not to deal with past violations, but to avoid future wrongs. If injury is certainly impending, that is enough. Prevention of impending future injury is a recognized function of a court of equity.

*Rialto Theater, Inc.*, 714 P.2d at 333 *(quoting Reno Livestock Corporation v. Sun Oil Company (Delaware),* 638 P.2d 147, 153 (Wyo. 1981)).

In this case, Plaintiff requests the Court enforce and protect Plaintiff's 50% controlling interest in Azure Holding Group LLC, as is plainly required under binding Wyoming law. Not only has there been a threat to Plaintiff Steimle's interests, but they are being further depleted and destroyed with every day that goes by without Court assistance. In the near future, Plaintiff could

be deported from Costa Rica, his accounts depleted, and the business venture he spent years developing being destroyed.

**2.      A Temporary Restraining Order is Necessary to Prevent Irreparable, Immediate Damage to Plaintiff's Interests in Azure Holding and Indirect Interests in Azure Renewables.**

Plaintiff requests a temporary restraining order which would be effective immediately.  At this time, it is impossible for Plaintiff to know all of the actions and activities of Azure Holding, Azure Renewables, or Azure Development.  Without immediate Court intervention, Plaintiff will remain "locked out", will be uninformed, and will not have any say in Company decisions – despite the fact that he still rightfully owns a fifty percent (50%) controlling interest in Azure Holding, and indirectly has equal control over Azure Holding's 70% interest in Azure Renewables.

Immediate injunctive relief is especially necessary and proper given that the entities are still in their infancy and the critical months leading up to the commencement of operations, and the Defendant has made clear he will intentionally act oppressively towards Plaintiff's interests. He made this clear when, the day after he was served the Complaint in the above-captioned matter, he attended a meeting of Azure Renewables, on behalf of Azure Holding, for the purpose of removing Plaintiff from his role as President of the company – all without authority, knowledge of the unlawful nature of the activity, and active knowledge of the above-captioned matter.

Wyoming Rule of Civil Procedure for the Chancery Court 65(b) provides the procedure for the issuance of a temporary restraining order.  Rule 65(b) states in pertinent part:

> The chancery court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if:
>
>> (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and

(B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Wyo. R. Civ. P. C.C. 65(b).

Should the Court delay the matter for a later date, and not grant immediate injunctive relief, it is possible, if not likely, that the Defendant will continue to fast-track any present dealings or activities in Costa Rica that are in violation of the Wyoming Limited Liability Company Act in an attempt to render any prospective injunctive relief ineffective, knowing that it will be difficult to unwind these types of international transactions.

Further, it would create chaos if Plaintiff Steimle were to do the same thing as Defendant. If what Defendant has done is determined to be lawful, then Plaintiff would have equal right to start making unilateral decisions on the same issues.  For example, since Defendant called a meeting to remove Plaintiff as President of Azure Renewables, Plaintiff could immediately call a parallel meeting to reappoint himself to that role and remove Defendant from his corporate role. However, some unilateral actions are not easily unwound – especially when they include binding the company through contract with third-parties and the expenditure of company funds.   If Defendant were to dilute Plaintiff Azure Holding's interest in Azure Renewables, this Court would have no authority to unwind such a sale – leaving Plaintiff's fate to a foreign court with no understanding or concern over who controls the Wyoming LLC at issue.

The attorney certification required under Wyo. R. Civ. P. C.C. 65(b) is attached hereto and incorporated herein as ***Exhibit 2***.  Since the Complaint in this matter was served, the Defendant has taken unilateral actions in relation to voting Azure Holding's interests in Azure Renewables and has cut Plaintiff off from accessing Azure Holding's bank account.  The motion for preliminary injunction was sent to Defendant's home address, and he is readily aware of Plaintiffs' concerns – all while continuing to intentionally undermine Plaintiff's 50% control over Azure Holding.

As required by Wyo. R. Civ. P. C.C. 65(b), Plaintiff has set forth in the affidavit attached as Exhibit 1 that irreparable injury, loss, and damage will result should he continue to be treated as if he were not a member of Azure Holding.

It is only through a temporary restraining order that Defendant would be immediately prevented from unilaterally conducting activities for Azure Holding – something he has never been authorized to do under contract or Wyoming law.   Conversely, the temporary restraining order would be an insignificant burden on Defendant as it would simply require him to follow the same rules being followed by Plaintiff – and it would unwind those unauthorized, unilateral actions taken by Defendant after the above-captioned matter was filed.   In essence, it would create an even gameboard, where all parties abide by the same rules.

Should a temporary restraining order be granted, it would generally not exceed 10 days unless extended for good cause shown.   Wyo. R. Civ. P. C. C. 65(b).   However, Plaintiff respectfully requests that any temporary restraining order remain in effect until the hearing on Plaintiff's request for preliminary injunction previously filed.   It is only through such continuous injunctive relief that Plaintiff's interests can be fully protected.

**3.** **Form and Scope of Order.**

Wyo. R. Civ. P. C. C. Rule 65(d) states in pertinent part that every order granting an injunction and every restraining order shall set forth:

(1) the reasons for its issuance;

(2) shall be specific in terms; and

(3) shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained. . . ."

Accordingly, it is respectfully requested that the Court find Plaintiff will suffer immediate, great, and irreparable harm and damage in the event that the Defendant excludes Plaintiff from

exercising his rights and powers as a member of Azure Holding.  Plaintiff further requests that the Court find that an award of money damages cannot provide adequate compensation for the loss of Plaintiff's ability to exercise those rights in relation to all of the companies' current and future business dealings, especially at these critical times when the business is still in its infancy.  Plaintiff further requests the Court acknowledge that Defendant's unilateral actions on behalf of Azure Holding are not authorized under Wyoming law.

As to the acts to be restrained, Plaintiff requests the Court grant the relief requested above, which includes:

(1) Plaintiff must immediately be given equal administrative access to the Azure Holding bank account at Bank of America, and any other bank in which Defendant might have set up an account, as well as equal access to any and all financial records being maintained on behalf of Azure Holding;

(2) Defendant must immediately call a meeting of Azure Renewables and allow the Plaintiff's 70% controlling interest in that company to unwind any and all actions taken by Defendant without Plaintiff's consent, and if Defendant fails to do so, Plaintiff must be authorized to immediately call a meeting of Azure Renewables on behalf of the Plaintiff's 70% controlling interest in that company to unwind any and all actions taken by Defendant without Plaintiff's consent;

(3) the Defendant must be ordered to cease any and all unilateral communications and activities on behalf of Azure Holding in relation to Azure Renewables, and must copy Plaintiff on any and all communications to or from Azure Holding or relating to Azure Renewables;

(4) Defendant must immediately freeze any and all transactions to or from Azure Holding's bank account or the Azure Development bank account unless Plaintiff has consented to and authorize those transactions;

(5) Defendant shall not carry out or approve acts of disposition of the assets of Azure Renewables on behalf of Azure Holding, such as but not limited to leasing, selling or encumbering assets or selling or diluting stock, without prior Plaintiff's consent;

(6) Defendant must be ordered to refrain from taking any actions acting on behalf of Azure Holding unilaterally, unless Defendant has received written instructions from the Plaintiff consenting to such actions, including any actions representing Azure Holding as 70% shareholder of Azure Renewables.

Not only does Rule 65 of the Wyo. R. Civ. P. C. C. require this level of specificity, it also assures that the business interests of Plaintiffs are adequately protected.

Were the Court to deny Plaintiff's present motion, it could and would create chaos as the above-captioned matter progressed.  To use the Biblical phrase, "No man can serve two masters" – the very scenario that would exist if both 50% member of Azure Holding were authorized to unilaterally act on behalf of Azure Holding in relation to Azure Renewable and Azure Development.

**5.      Any Bond Should be Minimal.**

Finally, any bond, as required by Wyo. R. Civ. P. C. C. 65(c), should be minimal, as Plaintiffs are merely seeking to preserve the status quo.  Rule 65(c) provides as follows:

> The chancery court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the chancery court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained.

No injury could befall Defendants by merely requiring them to follow what the law already requires, giving Plaintiff the opportunity to communicate his opinions in relation to any and all business decisions, and requiring unanimity in relation to all decisions of this 50/50 member-managed LLC.

The Court accordingly should require a bond of no more than $500.00.

## CONCLUSION

WHEREFORE, Plaintiff respectfully requests and prays that the Court grant:

(1)      An immediate temporary restraining order as set forth above;

(2)      After further notice and evidentiary hearing, an order imposing a preliminary injunction as set forth in Plaintiff's prior motion; and

(3)    For such other and further relief the court deems just and equitable.

DATED this 29th day of May, 2024.

　/s/ Robert J. Walker　　　　　　　　
Robert J. Walker (7-4715)
John M. Walker (5-2224)
Walker Law, LLP
P.O. Box 22409
Cheyenne, WY   82003
(307) 529-2255 telephone

ATTORNEYS FOR PLAINTIFF

**CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the foregoing document was served upon the Defendant

in this matter, on this 29th day of May, 2024, via US Mail as follows:

**Andrew Thompson**
14109 Grand Traverse Drive
Charlotte, North Carolina 28278

　/s/ Robert J. Walker　　　　　　　
Walker Law, LLP

14

IN THE CHANCERY COURT, STATE OF WYOMING

MICHAEL STEIMLE, individually; )
MICHAEL STEIMLE, derivatively on )
behalf of and in the right of AZURE )
HOLDING GROUP, LLC, a Wyoming )
Limited Liability Company, )
)                                Case No. CH – 2024-0000010
    *Plaintiffs,* )
)
vs. )
)
ANDREW THOMPSON, individually; )
)
    *Defendant.* )

WY Chancery Court
May 29 2024 04:34PM
CH-2024-0000010
73261390
N/A
**FILED**

## AFFIDAVIT OF MICHAEL STEIMLE

I, Michael Steimle, a Plaintiff in the above-captioned matter, being first duly sworn upon my oath, having personal knowledge of the matters stated herein, and being of lawful age and otherwise competent to testify, do depose and state:

1.      I have reviewed the Complaint and the Motion for Temporary Restraining Order ("Motion") filed in the above-captioned matter.

2.      The factual information contained within the Complaint and Motion is true and correct to the best of my knowledge and belief.

3.      Specifically, the Defendant, Andrew Thompson, and I agreed to form Azure Holding Group, LLC ("Azure Holding") to own 100% of Azure Renewables, S.A. ("Azure Renewables"), a Costa Rican company, as part of a joint plan to develop technologies related to processing agricultural byproducts, to sell carbon credits, and to seek out the necessary investment to capitalize the endeavor.

4.      It was agreed that Azure Holding would be formed in Wyoming as a 50/50 LLC with Andrew Thompson (the "Defendant") and myself being co-owners with equal say.

EXHIBIT 1

5.     The Defendant selected and hired a firm from Wyoming named Cloud Peak to form the entity on behalf of myself and the Defendant.

6.     Azure Holding was formed in June of 2022.

7.     I have made multiple requests to the Defendant for copies of the documents Cloud Peak prepared to form Azure Holding.  The Defendant has not provided those records, despite my requests.

8.     I have contacted Cloud Peak to request they provide me copies of the formation documents for Azure Holding and they have refused because the Defendant is the individual with whom they worked to form the entity.

9.     I have never seen an operating agreement for Azure Holding and never voted to approve any operating agreement for Azure Holding.

10.     After forming Azure Holding, I have signed numerous documents on behalf of Azure Holding, including many documents relating to the formation and operation of Azure Renewables.

11.     For example, on or about July 6, 2022, a formal document was sworn to and publicly filed in Costa Rica declaring the ownership of Azure Renewables, which also includes a sworn declaration as to the participants in Azure Holdings.  As part of this public filing, under Section 5.1.3.2, the Defendant and I declared that I owned 50% of Azure Holding and Defendant owned the other 50%.  A copy of the "Resumen de la declaracion de la persona juridica" for Azure Renewables is attached hereto and is incorporated herein as ***Exhibit A***.

12.     Similarly, on or about March 6, 2023, the Defendant and I were the only two individuals to execute the Shareholders' Agreement for Azure Renewables on behalf of Azure Holding.  A copy of the cover page and signature page are attached hereto and are incorporated

herein as **Exhibit B**, with the remainder of the Agreement excluded as to not violate and confidentiality requirements.

13.     On behalf of Azure Holding Group, upon consent of all its members, I signed a proxy letter directing that a meeting be held and recorded for Azure Renewables – with certain actions being passed, including my appointment as President of Azure Renewables.  A copy of this "Article 143" proxy letter is attached hereto and is incorporated herein as ***Exhibit C***.

14.     Over time, a portion of Azure Renewables was sold to investors to capitalize the planned project.

15.     In order to solicit additional investors, the Defendant drafted a document to solicit additional investors, with his name appearing on the front cover as its author.  On page 3 of the packet of information, the Defendant explains the ownership and control of the various entities involved in the project, including Azure Renewables, Azure Holding, and a company called Azure Development Company, LLC ("Azure Development").  Within the document, the Defendant unequivocally acknowledges that I am an equal manager of Azure Holding, that Azure Renewables is 70% owned by Azure Holding, that Azure Development is wholly owned by Azure Holding, and that I am an equal manager of Azure Development.  The document is marked as CONFIDENTIAL, but I can provide a copy to the Court upon entry of an appropriate protective order.

16.     Upon my appointment as President of Azure Renewables, I moved to Costa Rica because it would have been very difficult to oversee the many details of the project from the United States.  My residency status in Costa Rica is dependent on my role within Azure Renewables, and Azure Renewables has been paying for my rental car and condo while I have resided in Costa Rica.

17.     I have undertaken substantial efforts to move the project forward, including overseeing the necessary engineering work on the project as well as developing relationships with the contractors that will be necessary to complete the work.

18.     The Defendant's primary role in the project has been to secure investment and work with investors to ensure the project has sufficient funding to move forward.

19.     Upon the creation of Azure Holding, Azure Development, and Azure Renewables, the Defendant set up a separate bank account for each of the entities.  Upon information and belief, when an investment was made in Azure Renewables, the Defendant would deposit those funds into the Azure Holding or Azure Development bank account.

20.     Upon the creation of the bank accounts, I was provided login information to electronically access the accounts. I was also provided access to the joint Quickbooks account that was used to track the transactions for all three accounts.

21.     However, in approximately March of 2024, I attempted to access the Bank of America account for Azure Holding, and was informed that my access as an authorized user had been removed, and would not be restored without the Defendant signing off.  On or about March 21, 2024, I emailed Defendant regarding the issue and requesting he contact the bank to restore my access.  The bank never restored my access and the Defendant never explained what efforts, if any, he took to try and resolve my concern.

22.     On or about May 7, 2024, I had the Complaint in the above-captioned matter filed in this Court as I was concerned that the Defendant was preparing to call a meeting of Azure Renewables and would use Azure Holding's 70% controlling interest to remove me as President. The Defendant had generally stopped communicating with me and had stopped paying invoices due to M3 Construction, Inc.  – the construction and project management firm contracted to perform labor on the project, of which I am the sole owner of.

23.     According to the process server, the Defendant was personally served the Complaint on May 14, 2024.

24.     Notwithstanding, on May 15, 2024, an electronic meeting of Azure Renewables was called, with the Defendant representing that he was attending on behalf of Azure Holding.  At the meeting it was resolved to remove me as the President and to appoint Kevin Tangen as President and Jerome McSorley as Secretary.  A copy of the publicly recorded meeting minutes is attached hereto as ***Exhibit D***.

25.     I was never informed of the meeting, no meeting of Azure Holding was ever held in relation to the meeting, and the Defendant has not communicated anything to me regarding the meeting.

26.     It is my understanding that under Costa Rican law, the actions that occurred at the May 15 meeting must be challenged within 90 days.  However, it is my understanding that a challenge would not be successful unless there is an order from a Wyoming Court declaring the actions of the Defendant were unauthorized.

27.     Subsequent to the meeting, the Defendant has removed the access I had to the Azure Development bank account and removed Azure Renewable's accountants from having access to the Quickbooks file.

28.     In the past, the Defendant represented to me that he thought it would be a good idea to set up bank accounts in foreign jurisdictions to protect the funds from outsiders.  I am very concerned that without any oversight, the Defendant will be able to transfer some or all of Azure Holding's funds into foreign accounts beyond the jurisdiction of this Court.

29.     Additionally, the Defendant now has unfettered control over any and all communications that are sent on behalf of Azure Holding, Azure Renewables, and Azure Development – including those to investors, contractors, and all public filings in Costa Rica.  He can use those contacts in such a way that even if my position as President is restored, he will have destroyed my credibility and reputation.

30.     I am already aware that he has contacted multiple vendors informing them that I have been removed from Azure Renewables – disparaging me and my role with likely all those doing business with Azure Renewables.  A copy of one such letter, making the direction to not communicate with me, is attached hereto as ***Exhibit E***.

31.     These communications even leave my residency status in Costa Rica is at risk.

32.     My livelihood will have been taken away, and Defendant is selectively choosing to not pay my construction and project management firm (M3 Construction) the substantial past due invoices – squeezing me out of Costa Rica and from fulfilling my obligations to the project.

33.     Defendant's actions in relation to Azure Renewables has also made it so he can cut me off from those funds I need to make a livelihood and pay for my own personal expenses.  By cutting me off from those guaranteed payments, Defendant is intentionally limiting the resources I would have to challenge his unlawful actions.

34.     To date, Azure Renewables owes M3 Construction approximately $50,000 in missed invoices, which will grow by another $10 to $15 thousand by the end of May.

35.     I am also personally owed $40,000 per month in salary from Azure Renewables, which has not been paid for two months.

36.     Further, I am very concerned that the Defendant will use his unfettered control over Azure Renewables to sell additional shares in Renewables to new investors – diluting Azure Holding's interest without my consent or authority.  I currently have no control in Costa Rica over the price any shares would be sold for, the number of shares sold, or to whom the shares would be sold.  Defendant, through unilateral unlawful action, could dilute those interest to the point where Azure Holding would lose the controlling interest in Azure Renewables, or in some other manner that would benefit him personally – all to my personal detriment.

37.     These are the very concerns that were discussed in the Complaint, and despite having received the Complaint, the Defendant went through with his unilateral actions anyway – without ever contacting me or holding a single meeting on behalf of Azure Holding or Azure Development.

38.     I am presently suffering irreparable harm consequential to the Defendant in the above-captioned matter.

39.     If the Defendant were to dilute Azure Holding's interest in Azure Renewables, there is likely nothing any American court could do to unwind the transactions conducted under Costa Rican's law.

40.     To date, I have invested hundreds of hours and hundreds of thousands of dollars into the successful operation of Azure Renewables and related entities.

41.     The Defendants has refused, and made clear through his actions and words that he will not honor or recognize my rights and interests in Azure Holding or Azure Development, its wholly owned subsidiary.

42.     Despite my substantial investment and efforts in Azure Holding and Azure Renewables, the Defendant is actively preventing me from exercising any rights or privileges within the companies.

43.     I cannot know all the ways in which the Defendant is harming my current interests, and that lack of information is perhaps the biggest harm of all.  As a 50% owner of Azure Holding, I have equal rights and access to that information.  Without being informed, I cannot exercise my 50% controlling interest in Azure Holding.

44.     My rights are being irreparably harmed every moment I am excluded from being informed regarding company business and decisions.  If my rights are not immediately restored, during the pendency of the above-captioned litigation, it is possible that the business and

operations of Azure Renewables will be so irreparably harmed that the companies will never actually achieve their purpose, or earn the profits that are only possible through proper management.

45.     If Azure Holding and Azure Renewables are mismanaged, the potential lost revenue could be in the hundreds of millions of dollars, with no chance of ever recovering the losses because it is unlikely the Defendant owns sufficient assets to cover such substantial losses and because the Defendant has exclusive control over Azure Holding's accounts – he can transfer those assets to accounts overseas where it would be highly improbable the funds would ever be seen again.

FURTHER AFFIANT SAYETH NAUGHT.

Dated this _28_ day of May 2024.

_____
Michael Steimle

STATE OF _Georgia_                    )
                                                  ) ss.
COUNTY OF _Chatham_            )

This Affidavit was acknowledged, subscribed and sworn to before me this _28_ day of May 2024, by Michael Steimle.

_____
Notary Public

My commission expires: _3/12/2028_

India Simmons
NOTARY PUBLIC
Chatham County
State of Georgia
My Comm. Expires 03/12/2028

8

# Resumen de la declaración de la persona jurídica
**AZURE RENEWABLES SOCIEDAD ANONIMA**

## 1. Datos generales

**N° Declaración:** 2022-3101856623-1-O    **Tipo:** Ordinaria    **Período:** 2022

## 2. Información de la persona jurídica

| | | | |
|---|---|---|---|
| **Cédula jurídica:** | 3-101-856623 | **Actividad económica:** | PERSONA JURIDICA NO REALIZA ACTIVIDAD ECONOMICA. |
| **Razón social:** | AZURE RENEWABLES SOCIEDAD ANONIMA | **Teléfono:** | (506)2503-9800 |
| **Nombre comercial:** | NO INDICA | **Teléfono secundario:** | |
| **Fecha de constitución:** | 06/07/2022 | **Correo electrónico:** | jose.guerra@dentons.com |
| **País de constitución:** | COSTA RICA | **Página web:** | |
| **Dirección:** | SAN JOSÉ SANTA ANA POZOS Centro Empresarial Forum I, Oficinas Dentons Muñoz, segundo piso. | **Código postal:** | |
| **Casa matriz:** | | **País de casa matriz:** | |

## 3. Capital social

**Participaciones comunes**

| | | | |
|---|---|---|---|
| **Moneda:** | Dólar Americano | **Cantidad total:** | 100.00 |
| **Valor nominal:** | 1.00 | **Cantidad distribuida:** | 100.00 |
| **Valor nominal total:** | 100.00 | **Cantidad en cartera:** | 0.00 |

**Participaciones preferentes con derecho a voto**

| | | | |
|---|---|---|---|
| **Moneda:** | | **Cantidad total:** | 0.00 |
| **Valor nominal:** | 0.00 | **Cantidad distribuida:** | 0.00 |
| **Valor nominal total:** | 0.00 | **Cantidad en cartera:** | 0.00 |

**Participaciones preferentes sin derecho a voto**

| | | | |
|---|---|---|---|
| **Moneda:** | | **Cantidad total:** | 0.00 |
| **Valor nominal:** | 0.00 | **Cantidad distribuida:** | 0.00 |
| **Valor nominal total:** | 0.00 | **Cantidad en cartera:** | 0.00 |

## 4. Participantes

## 4.1. Participantes físicos nacionales

## 4.2. Participantes físicos extranjeros

## 4.3. Participantes jurídicos nacionales

**EXHIBIT A**

## 4.4. Participantes jurídicos extranjeros

**Nombre:** Azure Holding Group, LLC.
**Identificación:** 2022001123782
**País de constitución:** ESTADOS UNIDOS
**Comunes:**
  Fecha desde la que es participante: 10/08/2022

| Origen | Cantidad total | Con derecho a voto | Condiciones |
|---|---|---|---|
| En propiedad única | 100.00 | 100.00 | |
| En Copropiedad | 0.00 | 0.00 | |

**Preferentes:**
  Fecha desde la que es participante: No aplica

| Origen | Cantidad total | Con derecho a voto | Condiciones |
|---|---|---|---|
| En propiedad única | 0.00 | 0.00 | |
| En Copropiedad | 0.00 | 0.00 | |

## 4.5. Fideicomisos

## 4.6. Estados/Países que figuren como participantes

# 5. Declaraciones Jurídicas Extranjeras

## 5.1. Azure Holding Group, LLC.

### 5.1.1. Información de la persona jurídica

| | | | |
|---|---|---|---|
| **Cédula jurídica:** | 2022001123782 | **Actividad económica:** | PERSONA JURIDICA NO REALIZA ACTIVIDAD ECONOMICA. |
| **Razón social:** | Azure Holding Group, LLC. | **Teléfono:** | (307)7063736880 |
| **Nombre comercial:** | Azure Holding Group | **Teléfono secundario:** | |
| **Fecha de constitución:** | 07/06/2022 | **Correo electrónico:** | michael.steimle@m3gc.com |
| **País de constitución:** | ESTADOS UNIDOS | **Página web:** | |
| **Dirección:** | Wyoming, Estados Unidos 1309, Coffeen Avenue STE 1200, Sheridan Wyoming 82801. | **Código postal:** | 82801 |

### 5.1.2. Capital social
**Participaciones comunes**

| | | | |
|---|---|---|---|
| **Moneda:** | Dólar Americano | **Cantidad total:** | 1,000.00 |
| **Valor nominal:** | 0.6 | **Cantidad distribuida:** | 1,000.00 |
| **Valor nominal total:** | 600.00 | **Cantidad en cartera:** | 0.00 |

**Participaciones preferentes con derecho a voto**

| | | | |
|---|---|---|---|
| **Moneda:** | | **Cantidad total:** | 0.00 |
| **Valor nominal:** | 0.00 | **Cantidad distribuida:** | 0.00 |
| **Valor nominal total:** | 0.00 | **Cantidad en cartera:** | 0.00 |

**Participaciones preferentes sin derecho a voto**

| | | | |
|---|---|---|---|
| **Moneda:** | | **Cantidad total:** | 0.00 |
| **Valor nominal:** | 0.00 | **Cantidad distribuida:** | 0.00 |
| **Valor nominal total:** | 0.00 | **Cantidad en cartera:** | 0.00 |

### 5.1.3. Participantes

### 5.1.3.1. Participantes físicos nacionales

### 5.1.3.2. Participantes físicos extranjeros

**Nombre:** Michael William Steimle
**Tipo de identificación:** Pasaporte
**Fecha de nacimiento:** 04/01/1973
**País de la identificación:** ESTADOS UNIDOS
**Identificación:** 570463664
**Fallecido/a:** No
**Comunes:**
  Fecha desde la que es participante: 07/06/2022

| Origen | Cantidad total | Con derecho a voto | Condiciones |
|---|---|---|---|
| En propiedad única | 500.00 | 500.00 | |
| En Copropiedad | 0.00 | 0.00 | |

**Preferentes:**
  Fecha desde la que es participante: No aplica

| Origen | Cantidad total | Con derecho a voto | Condiciones |
|---|---|---|---|
| En propiedad única | 0.00 | 0.00 | |
| En Copropiedad | 0.00 | 0.00 | |

**Nombre:** Andrew Little Thompson
**Tipo de identificación:** Pasaporte
**Fecha de nacimiento:** 19/11/1979
**País de la identificación:** ESTADOS UNIDOS
**Identificación:** 557098753
**Fallecido/a:** No
**Comunes:**
  Fecha desde la que es participante: 07/06/2022

| Origen | Cantidad total | Con derecho a voto | Condiciones |
|---|---|---|---|
| En propiedad única | 500.00 | 500.00 | |
| En Copropiedad | 0.00 | 0.00 | |

**Preferentes:**
  Fecha desde la que es participante: No aplica

| Origen | Cantidad total | Con derecho a voto | Condiciones |
|---|---|---|---|
| En propiedad única | 0.00 | 0.00 | |
| En Copropiedad | 0.00 | 0.00 | |

### 5.1.3.3. Participantes jurídicos nacionales

### 5.1.3.4. Participantes jurídicos extranjeros

### 5.1.3.5. Participantes fideicomisos

### 5.1.3.6. Estados/Países que figuren como participantes


# 6. Beneficiarios finales declarados

## 6.1. Nacionales

## 6.2. Extranjeros

# 7. Responsable del envío de la declaración

| Tipo: | Apoderado | | |
|---|---|---|---|
| **Número identificación:** | 01-1473-0898 | **Lugar de nacimiento:** | CATEDRAL CENTRAL SAN JOSE |
| **Nombre:** | JOSE MANUEL | **Fecha de nacimiento:** | 04/09/1991 |
| **Primer apellido:** | GUERRA | **Teléfono:** | (506)6043-1071 |
| **Segundo apellido:** | BONILLA | **Teléfono secundario:** | |
| **País de residencia:** | COSTA RICA | **Correo electrónico:** | jose.guerra@dentons.com |
| **Dirección:** | SAN JOSÉ<br>SANTA ANA<br>POZOS<br>Centro empresarial Forum I, Edificio B, Segundo Piso, Dentons Muñoz. | **Nacionalidades:** | COSTA RICA |
| **Código postal:** | | | |

**Información descargada por:**
**Nombre:** JOSE MANUEL GUERRA BONILLA
**Identificación:** 01-1473-0898
**Fecha:** 24/10/2022 12:49:29 p.m.

*Confidential*

---

**SHAREHOLDERS' AGREEMENT**

**AZURE RENEWABLES, SOCIEDAD ANONIMA**

**March 6th, 2023.**

---

**EXHIBIT B**

*Confidential*

████████████████████████████████████
████████████████████████████████████
██████████████████████████████████ .

\* \* \*

IN WITNESS WHEREOF the parties have executed this Agreement as of the date first set forth above.

**Michael Steimle**
**By Azure Holding Group, LLC**

_____
**Jerome McSorley**
**By CostaMerica Capital, LLC,**


**Andrew Thompson**
**By Azure Holding Group, LLC**

_____
**Tod Coles**
**By CostaMerica Capital, LLC,**

| | |
|---|---|
| 12 de octubre de 2022 | October 12 2022 |
| **Sr. José Manuel Guerra Bonilla**<br>**Dentons Muñoz Costa Rica**<br>**Apartado 12981-1000**<br>**San José, Costa Rica** | **Mr. Jose Manuel Guerra Bonilla**<br>**Dentons Muñoz Costa Rica**<br>**P.O. Box 12981-1000**<br>**San José, Costa Rica** |
| Estimado Sr. Guerra: | Dear Mr. Guerra: |
| La presente es para conferirle carta poder, de conformidad con el artículo 143 del Código de Comercio de la República de Costa Rica, para asistir a la Asamblea Extraordinaria de Accionistas de **AZURE RENEWABLES SOCIEDAD ANONIMA**, una sociedad debidamente incorporada conforme las leyes de la República de Costa Rica, con cédula de persona jurídica número 3-101-856623 ("La Sociedad), que se celebrará en las Oficinas Dentons Muñoz, ubicadas en San José, Santa Ana, Pozos, Centro Empresarial Forum I, Edificio B, segundo piso, durante el mes de octubre de 2022. | This letter is to confer to you a proxy letter, pursuant to the article 143 of the Commercial Code of the Republic of Costa Rica, to attend the special Shareholder Meeting of **AZURE RENEWABLES SOCIEDAD ANONIMA**, a company duly incorporated in accordance with the laws of the Republic of Costa Rica, with corporate identification number 3-101-856623 ("The Company") to be held at Dentons Muñoz Offices, located in San José, Santa Ana, Pozos, Forum I Business Center, Building B, second floor, during the month of October, 2022. |
| Esta carta poder es otorgada con el propósito de que, en dicha asamblea, las siguientes resoluciones sean adoptadas: | I hereby grant this proxy for the following resolutions to be passed at said Meeting: |
| a) Prescindir del trámite de convocatoria previa debido a que el 100% del capital social estará representado. | a) To waive the prior notice requirement since 100% of the capital stock will be represented. |
| b) Designar a la Sr. Guerra, como Presidente (a) y Secretario (a) Ad-Hoc, para los fines de esta Asamblea Extraordinaria de Accionistas. | b) To appoint Mr. Guerra, as President and Secretary Ad-Hoc for this Shareholders' meeting purposes. |
| c) En nombre de la Sociedad, aprobar las siguientes decisiones: | c) To approve the following decisions on behalf of the company: |
| I. Otorgar poder especial, tan amplio y suficiente como en derecho corresponda, de conformidad con el artículo 1256 del Código Civil de Costa Rica y el artículo 3 de la Resolución Conjunta de Alcance General del Registro de Transparencia y Beneficiarios Finales del Banco Central de Costa Rica, a i) **EDUARDO JOSÉ ZÚÑIGA BRENES**, mayor de edad, casado en primeras nupcias, abogado, portador de la cédula de identidad 1-1095-0656, con domicilio profesional en | I. To grant special power of attorney, as broad and sufficient as permitted by law, in accordance with the article 1256 of the Costa Rican Civil Code and article 3 of the Joint Resolution of General Scope of the Registry of Transparency and Final Beneficiaries of the Central Bank of Costa Rica, to i) **EDUARDO JOSE ZUÑIGA BRENES,** of legal age, married once, lawyer, bearer of the identity card number 1-1095-0656, with professional domicile at Dentons Muñoz Offices, located in |

**EXHIBIT C**

las Oficinas Dentons Muñoz, ubicadas en San José, Santa Ana, Pozos, Centro Empresarial Forum I, Edificio B, segundo piso, y ii) **JOSÉ MANUEL GUERRA BONILLA,** mayor de edad, soltero, abogado, portador de la cédula de identidad número 1-1473-0898, con domicilio profesional en las Oficinas Dentons Muñoz, ubicadas en San José, Santa Ana, Pozos, Centro Empresarial Forum I, Edificio B, segundo piso, pudiendo actuar conjunta o separadamente, para actuar en representación de la Sociedad y realizar todos y cualesquiera actos relacionados con el Registro del Registro de Transparencia y Beneficiarios Finales del Banco Central de Costa Rica, en cumplimiento de las leyes y reglamentos relevantes, vigentes y aplicados por las autoridades competentes. Los apoderados estarán autorizado para: (i) interactuar con las plataformas tecnológicas creadas para este registro; (ii) presentar todas las declaraciones ordinarias y extraordinarias; (iii) presentar todo tipo de formularios, declaraciones, declaraciones juradas, y/o solicitudes; (iv) solicitar rectificación de cualquier información previamente suministrada y presentar formularios, declaraciones, declaraciones juradas y/o solicitudes de rectificación, según sea necesario; (v) actuar en representación de la Sociedad en sede judicial y/o administrativa en cualesquiera procedimientos relacionados con este registro; y, (vi) recibir notificaciones y comunicaciones relacionadas con este registro. Los apoderados estarán autorizados para otorgar, delegar y sustituir su poder en todo o en parte, reservándose siempre el ejercicio de sus poderes, revocar sustituciones y poderes y hacer otros de nuevo, sin perder nunca sus poderes. Queda expresamente convenido que: (a) los apoderados se encuentran autorizados a suministrar toda la información requerida sobre los accionistas de la Sociedad, así como con relación a todas las personas físicas y jurídicas que participan, sea directa o indirectamente, en la cadena de propiedad de la Sociedad, hasta el nivel

San José, Santa Ana, Pozos, Forum I Business Center, Building B, Second Floor, and ii) **JOSE MANUEL GUERRA BONILLA,** of legal age, single, lawyer, bearer of the identity card number 1-1473-0898, with professional domicile in San Jose, Santa Ana, Pozos, Forum I Business Center, Building B, Second Floor, acting jointly or separately, to act on behalf of the Company to perform any and all acts related to the Registry of Transparency and Final Beneficiaries of the Central Bank of Costa Rica, in compliance with the relevant laws and regulations, in force and applied by the competent authorities. The proxy holders will be authorized to: (i) interact with the technological platforms created for this registry; (ii) submit all ordinary and extraordinary declarations; (iii) submit all kinds of forms, declarations, affidavits, and/or requests; (iv) request the rectification of any information previously provided, and submit forms, declarations, sworn statements and/or requests for rectification, if necessary; (v) act on behalf of the Company in judicial and/or administrative headquarters in any procedures related to this registry; and, (vi) receive notifications and communications related to this registry. The power holders shall be authorized to grant, delegate and substitute their power in whole or in part, always reserving the exercise of his powers, the ability to revoke substitutions and powers, and grant new ones, without losing their powers. It has been expressly agreed that the power holders are authorized to provide all necessary information required on the shareholders of the Company, as well as in relation to all natural and legal persons that participate, either directly or indirectly, in the ownership chain of the Company, in the extent that it is required by the Costa Rican Central Bank. The power holders are hereby released from any liability or responsibility related to or arising from the entry of misleading, inaccurate and/or incomplete information

solicitado por el Banco Central de Costa Rica; y, (b) la Sociedad libera en este acto a los apoderados de cualquier responsabilidad relacionada con o derivada del ingreso de información falsa, imprecisa y/o incompleta proporcionada por la Sociedad y sus respectivos funcionarios, directores, apoderados, empleados, agentes, consejeros, contralores y/o miembros. La Sociedad acuerda defender, indemnizar y mantener a los apoderados incólumes de y contra todas y cualesquiera pérdidas, reclamos, daños, responsabilidades y gastos, o cualquier reclamo, litigio, investigación o procedimiento relacionado, iniciado por cualquier autoridad competente.

provided by the Company and its respective officers, directors, proxy holders, employees, agents, advisors, controlling persons and/or members. The Company agrees to defend, indemnify and hold the power holder harmless from and against any and all losses, claims, damages, liabilities and expenses, or any related claim, litigation, investigation or proceeding initiated by any competent authority.

II. Otorgar Poder Especial, tan amplio y suficiente como en derecho corresponda, de conformidad con el artículo 1256 del Código Civil de Costa Rica, en provecho de: (i) **RICARDO JOSÉ MORA AZOFEIFA,** mayor, soltero, licenciado en Derecho, portador de la cédula de identidad tres – cero cuatro nueve nueve – cero ocho siete cero, con domicilio profesional en San José, Santa Ana, Pozos, Centro Empresarial Forum I, Edificio B, Segundo Piso, Dentons Muñoz, (ii) **ARON MEKLER BENAVIDES**, de nacionalidad peruana, mayor de edad, soltero, asistente legal, vecino de San José, Escazú, San Rafael, de Perimercados 100 metros oeste y 25 metros sur, portador de la cédula de residencia DIMEX número 160400221819; y, (iii) **JOSÉ MANUEL GUERRA BONILLA**, mayor de edad, soltero, abogado, portador de la cédula de identidad número 1-1473-0898, con domicilio profesional en las oficinas de Dentons Muñoz, ubicadas en San José, Santa Ana, Pozos, Centro Empresarial Fórum I, Edificio B, Segundo Piso; para que, en nombre y representación de **MICHAEL (nombre) STEIMLE (apellido),** de un solo apellido en razón de su nacionalidad estadounidense, mayor de edad, casado una vez, empresario, portador del pasaporte de su país número cinco siete cero cuatro seis tres seis seis cuatro, vecino de uno

II. To grant Special Power Of Attorney, as broad and sufficient as permitted by law, in accordance with the article 1256 of the Costa Rican Civil Code, to: **(i) RICARDO JOSÉ MORA AZOFEIFA,** of legal age, single, Bachelor in Law, bearer of identity card three - zero four nine nine - zero eight seven zero, with professional domicile in San José, Santa Ana, Pozos, Centro Empresarial Forum I, Building B, Second Floor, Dentons Muñoz, **(ii) ARON MEKLER BENAVIDES,** of Peruvian nationality, of legal age, single, resident of San Jose, Escazu, San Rafael, from Perimercados 100 meters west and 25 meters south, bearer of the DIMEX residence card number 160400221819; and **(iii) JOSE MANUEL GUERRA BONILLA,** of legal age, single, lawyer, bearer of personal identity card number 1-1473-0898, with professional address at Dentons Muñoz Offices, located in San José, Santa Ana, Pozos, Forum I Business Center, Building B, second floor, so that, in the name and representation of **MICHAEL STEIMLE** of legal age, married once, businessman, bearer of the passport number 570463664, domiciled at 1 Wylly Island Drive, Savannah, Georgia, 31406, acting jointly or individually and to the fullest extent possible, they may validly register his

Wylly Island Drive, Savannah, Georgia, tres uno cuatro cero seis, actuando conjunta o individualmente, y de la manera más extensa, puedan válidamente registrar su nombramiento como Presidente y representante legal de la sociedad **AZURE RENEWABLES S.A.**, ante el Registro Único Tributario de Costa Rica. Los apoderados están plenamente facultados para llevar a cabo los siguientes actos: a) solicitar un Número de Identificación Tributaria Especial (NITE) para acceder al Portal Administración Tributaria Virtual, de conformidad con los artículos 102, 171 y 180 del Código de Normas y Procedimientos Tributarios, para lo cual podrán gestionar, presentar, firmar, obtener o retirar cualquier formulario o solicitud, así como realizar cualquier otro trámite requerido a tales fines; y, b) completar, firmar y presentar el Formulario D-140 para la Declaración de Inscripción y/o Modificación de Datos de la sociedad en el Registro Único Tributario. La presentación de solicitudes, requisitos y declaraciones ante la Administración Tributaria podrá realizarse de forma presencial o virtual a través de la plataforma de trámites virtuales de la Dirección General de Tributación (TRAVI); la firma de cualesquiera documentos podrá realizarse de forma convencional o a través de firma digital. El apoderado estará autorizado para otorgar, delegar y sustituir su poder en todo o en parte, reservándose siempre el ejercicio de sus poderes, revocar sustituciones y poderes y hacer otros de nuevo, sin perder nunca sus poderes.

designation as President and legal representative of the company **AZURE RENEWABLES S.A.**, in the Unique Tax Registry of Costa Rica. The power holders are fully empowered to carry out the following activities: **a)** request a Special Tax Identification Number (NITE) to access the Virtual Tax Administration Portal, pursuant to articles 102, 171 and 180 of the Code of Tax Rules and Procedures, for which they will be able to manage, file, sign, obtain or withdraw any form or request, as well as to carry out any other formality required for this purpose; and, **b)** complete, sign and file the D-140 Form for Statements of Registration and/or Data Modification of the Company in the Unique Tax Registry. Filing of applications, requirements and declarations to the Tax Administration may be executed in person or virtually through the platform for virtual procedures of the General Tax Administration (TRAVI); all documents can be signed conventionally or through digital signature. The power holder shall be authorized to grant, delegate and substitute his power in whole or in part, always reserving the exercise of his powers, the ability to revoke substitutions and powers, and grant new ones, without losing his powers.

III.   Comisionar a los Notarios Públicos **JOSÉ ANTONIO MUÑOZ FONSECA** y **EDUARDO JOSÉ ZÚÑIGA BRENES**, para que, conjunta o separadamente, protocolicen esta acta, o designen a otro notario con este propósito.

III.   To commission the Notary Public **JOSÉ ANTONIO MUÑOZ FONSECA** and **EDUARDO JOSE ZUÑIGA BRENES**, so that acting, jointly or separately, they may notarise these minutes, or designate another notary for this purpose.

IV.   Declarar firmes los anteriores acuerdos.

IV.   To declare the above agreements firm.

De conformidad con el Libro de Registro de Accionistas de la sociedad **AZURE**

According to Shareholders Registry Book of the company **AZURE RENEWABLES S.A.**,

**RENEWABLES S.A.**, la compañía **AZURE HOLDING GROUP, LLC** es propietaria de 100 acciones comunes y nominativas, con valor nominal de 1 dólar cada una, las cuales representan el 100% del capital social suscrito y pagado de la Sociedad.

Atentamente,

MICHAEL STEIMLE
Por/ **AZURE HOLDING GROUP, LLC**

the company **AZURE HOLDING GROUP, LLC**, is the owner of 100 common and nominative shares, with a par value of 1 dollar each, which represent 100% of the capital stock of the Company.

Sincerely,

MICHAEL STEIMLE
For/ **AZURE HOLDING GROUP, LLC**

**REPÚBLICA DE COSTA RICA**
**REGISTRO NACIONAL**
**CERTIFICACION DE IMAGENES**
**NUMERO DE CERTIFICACIÓN: RNPDIGITAL-729966-2024**
**TOMO: 2024  ASIENTO: 358424**
**TOTAL DE PÁGINAS: 3**

**EXHIBIT D**

**NUMERO OCHO**: Yo **CAROLINA MARÍA ARANGO CHASÍ,** Notario Público con oficina abierta en SAN

JOSÉ, exactamente en SAN RAFAEL DE ESCAZÚ, DEL CENTRO COMERCIAL LA PACO, DOSCIENTOS

CINCUENTA METROS SURESTE, CONDOMINIO TERRAZÚ, CASA DOS, debidamente comisionada al efecto,

protocolizo en lo conducente del libro de asamblea de accionistas, el acta número cuatro de la Asamblea General de

Accionistas de la sociedad denominada **AZURE RENEWABLES SOCIEDAD ANÓNIMA**, cédula jurídica número

TRES – CIENTO UNO – OCHOCIENTOS CINCUENTA Y SEIS MIL SEISCIENTOS VEINTITRES, que en lo

conducente dice: "**ACTA NÚMERO CUATRO**: Asamblea General Extraordinaria de la sociedad **AZURE**

**RENEWABLES SOCIEDAD ANÓNIMA**, domiciliada en San Jose, Santa Ana, Pozos, Centro Empresarial Forum

Uno, Edificio B, Segundo Piso, Oficinas De Dentons Muñoz, celebrada la plataforma de virtual de Microsoft Teams a

las once horas del día quince de mayo del año dos mil veinticuatro. Por estar presente la totalidad del capital social, se

prescinde del requisito de convocatoria previa, se declara abierta la sesión y se toman los siguientes acuerdos por

unanimidad: **PRIMERO:** designar al señor (…),y (…), como Presidente ad hoc y Secretario ad hoc respectivamente

de la presente asamblea general extraordinaria de Azure Renewables S.A., **SEGUNDO:** (...), **TERCERO:**

**REMOCIÓN** inmediata del señor **MICHEAL** (nombre) **STIEMLE** (de un solo apellido en razón de su nacionalidad

Estadounidense), portador del pasaporte CINCO SIETE CERO CUATRO SEIS TRES SEIS SEIS CUATRO, como

presidente de Azure Renewables S.A. **CUARTO:** nombramiento del señor **KEVIN** (nombre) **TANGEN** (de un solo

apellido en virtud de su nacionalidad Estadounidense, mayor de edad, casado, ingeniero, portador del pasaporte de su

país CINCO CINCO CINCO CUATRO SEIS SEIS NUEVE OCHO SEIS, vecino de Washington, Estados Unidos,

como nuevo presidente de Azure Renewables S.A., quien acepta su cargo de presidente y renuncia al cargo de

secretario a partir del registro del nuevo puesto. **QUINTO:** nombramiento del señor **JEROME** (nombre)

**McSORLEY** (de un solo apellido en razón de su nacionalidad Estadounidense), portador del pasaporte SEIS

CUATRO CUATRO CUATRO NUEVE NUEVE DOS DOS OCHO TRES, como nuevo secretario, quien acepta su

cargo en la presente asamblea. **SEXTO:** Se autoriza a Kevin Tangen, de calidades ya mencionadas para que protocolice

este acta en lo conducente o literal con el notario de su elección. No habiendo más asuntos que tratar, se declara en

firme el acuerdo anterior tomado por unanimidad de votos y se levanta la quince minutos después de iniciada. ES

TODO, a las once horas y veinte minutos del quince de mayo dos mil veinticuatro.". Daciones de fe notarial: La

suscrita Notario da fe de lo siguiente: a) que lo transcrito es copia en lo literal del original del acta cuatro respectivo

asentada en el libro legalizado de Actas de Asambleas Generales de Accionistas que para tal efecto lleva la sociedad,

b) que los acuerdos tomados lo fueron por unanimidad y se encuentran firmes, c) que el acta está firmada por los

llamados a hacerlo, d) que fue debidamente comisionado para hacer la presente protocolización, e) que en la asamblea

estuvo presente el quórum de ley, f) que la asamblea se celebró en cumplimiento de los requisitos legales, g) de la existencia actual de la sociedad con vista de la inscripción practicada en el Registro de Personas Jurídicas bajo el número de cédula jurídica antes indicado. Asimismo que según lo dispuesto en el artículo ciento cinco del Código Notarial, que ha adjuntado una copia del acta protocolizada a su archivo de referencias. Leída el acta preinserta y confrontada con su original, resulta conforme por lo que la suscrito Notario autoriza esta escritura en la ciudad de San José a las nueve horas treinta minutos del dieciséis de mayo del dos mil veinticuatro. FIRMAS CAC. LO ANTERIOR ES COPIA EN LO CONDUCENTE DE LA ESCRITURA NÚMERO OCHO, VISIBLE AL FOLIO DOCE FRENTE, DEL TOMO UNO DEL PROTOCOLO DE LA SUSCRITO NOTARIO, Y LO OMITIDO NO MODIFICA, ALTERA, CONDICIONA, RESTRINGEN NI DESVIRTÚA LO TRANSCRITO. CONFRONTADO CON SU ORIGINAL RESULTÓ CONFORME Y LO EXPIDO COMO PRIMER TESTIMONIO EN EL MISMO ACTO DE OTORGAMIENTO DE LA MATRIZ.. **RAZON NOTARIAL:** La suscrita Notario hace constar que los timbres de la presente escritura se pagaron mediante banca electrónica del BCR, el día dieciséis de mayo dos mil veinticuatro, bajo el número de entero del BCR 557995671. ES TODO. FIRMO EN DIGITAL.

CAROLINA MARIA ARANGO CHASI (FIRMA)
PERSONA FISICA, CPF-01-1604-0287.
Fecha declarada: 17/05/2024 12:48:33 PM
Esta es una representación gráfica únicamente,
verifique la validez de la firma.

**ESTA CERTIFICACION, CUYOS DERECHOS ARANCELARIOS FUERON DEBIDAMENTE CANCELADOS, CONSTITUYE DOCUMENTO PUBLICO CONFORME LO ESTABLECEN LOS ARTICULOS 45.2 DEL CODIGO PROCESAL CIVIL Y 5 INCISO D) DE LA LEY DE CERTIFICADOS, FIRMAS DIGITALES Y DOCUMENTOS ELECTRONICOS N° 8454, Y EL DECRETO EJECUTIVO N° 35488-J, PUBLICADO EN LA GACETA N° 196, DEL 8 DE OCTUBRE DE 2009. EN DICHO MARCO LEGAL SE ESTABLECE LA OBLIGATORIEDAD DE RECIBIR ESTE**

DOCUMENTO POR PARTE DE LOS ENTES PÚBLICOS Y PRIVADOS, ASÍ COMO PARA LOS PARTICULARES,
POR LO QUE SI TIENE PROBLEMAS PARA LA RECEPCIÓN DE ESTE DOCUMENTO Y APLICACIÓN DE SUS
EFECTOS LEGALES, SIRVASE COMUNICARLO AL CENTRO DE ASISTENCIA AL USUARIO, Teléfono. 2202-0888.
EMITIDA A TRAVES DEL PORTAL DE SERVICIOS DIGITALES  EL 20-May-2024  A LAS  18:57:01.
PODRA SER VERIFICADA EN EL SITIO www.rnpdigital.com DENTRO DE LOS SIGUIENTES 15 DIAS NATURALES.

AZURE RENEWABLES S.A.
CORPORATE ID: 3-101-856623
SAN JOSÉ, COSTA RICA



May 27, 2024

Dear Partner:

Please accept this letter, as formal notice of a significant change in the management structure of our company, **AZURE RENEWABLES S.A.**

Effective immediately, M3 Construction, LLC, M3 Engineering, LLC, including all of their respective employees as well as Michael W. Steimle, individually, have been discharged from any and all activity of Azure Renewables, S.A.

From the receipt of this letter, it is requested that all communications related to our company that previously might have been directed to Mr. Steimle (and/or his employees), be redirected to the new President at the email address: Kevin Tangen <kevin.tangen@azurerenew.com>.

We appreciate your attention to this change. A representative of Azure Renewables will be in touch soon to answer any questions you may have. For any queries or additional information, please do not hesitate to contact us.

Sincerely,

Kevin Tangen
President, Azure Renewables S.A.

**EXHIBIT E**

Robert J. Walker (#7-4715)
WALKER LAW
114 East 7th Ave., Suite 200
P.O. Box 22409
Cheyenne, WY 82003
Telephone: (307) 529-2255
Robert@WyoCounsel.com

*Attorney for Plaintiffs*

WY Chancery Court
May 29 2024 04:34PM
CH-2024-0000010
73261390
N/A
**FILED**

IN THE CHANCERY COURT, STATE OF WYOMING

MICHAEL STEIMLE, individually; )
MICHAEL STEIMLE, derivatively on )
behalf of and in the right of AZURE )
HOLDING GROUP, LLC, a Wyoming )
Limited Liability Company, )
) Case No. CH – 2024-0000010
    *Plaintiffs,* )
)
vs. )
)
ANDREW THOMPSON, individually; )
)
    *Defendant.* )

---

**ATTORNEY RULE 65(b) CERTIFICATION**

---

    I, Robert J. Walker (#7-4715), do hereby state and certify as follows:

    1.    On or about April 3, 2024, I sent to the Defendant and all shareholders of Azure

Holding (including Costa Rican counsel for Azure Renewables and for Defendant individually)

notifying them that as a 50/50 member of Azure Holding, my client had not authorized Defendant

1



to take any unilateral actions on behalf of Azure Holding in relation to its 70% interest in Azure Renewables.  A copy of that letter is attached to this Certification as ***Exhibit A***.

2.      The recipients were provided with the following citations, which are the controlling authorities on the issue: W.S. § 17-29-407(b)(iv) and *Mont. Food, Ltd. Liab. Co. v. Todosijevic*, 2015 WY 26, ¶ 24, 344 P.3d 751, 758.

3.      The recipients were informed that I was authorized by my client to immediately move to unwind any unilateral actions the Defendant might unilaterally take on behalf of Azure Holding.

4.      On May 10, 2024, I sent an additional letter to the same individuals notifying them that the Complaint and the motion for Preliminary Injunction had been filed in the above-captioned matter.  The letter again put the individuals on notice that my client had not ratified, approved of, consented to, or authorized any action on behalf of Azure Holding Group LLC.  A copy of this letter is attached hereto as ***Exhibit B***.

5.      These letters were sent with the intent of trying to preserve the status quo until the Court could become involved, and to avoid the filing of a motion for temporary restraining order.

6.      On or about May 14, 2024, the Defendant in the above-captioned matter was served.

7.      No responses have been given to any of the foregoing communications.  To the contrary, it appears the concerns expressed in the Complaint and communications caused the Defendant to "fast-track" his unlawful activities before the Court could intervene.

8.      For example, it is my understanding that the day after the Defendant was served, on May 15, he attended a meeting of Azure Renewables – representing that he was there on behalf of Azure Holding's 70% interest.  At the meeting he voted to remove my client from his role as

President of Azure Renewables.  Since then, it appears he has directed that letters be sent to the key players involved in the contemplated project – directing them to not communicate with my client.

9.     Despite the multiple communications and service of the Complaint, the Defendant has made clear that he will not be including my client in any business decisions for Azure Holding, Azure Renewables, or Azure Development.

10.     Additional notice prior to entering a temporary restraining order should not be required because (1) Michael Steimle is already entitled, under binding Wyoming precedent and statute, to the relief he requests; and (2) it is likely that even more significant adverse actions will be taken against Plaintiff's interests in the various entities pending the hearing on the present motion for injunctive relief.  Should the Court grant Plaintiff's request, Plaintiff will again be informed as to all company business and critical decisions made – a critical component of him exercising his rights as a 50% member of Azure Holding.

11.     Notice should also not be required because Plaintiff is only asking the Court to maintain the status quo, where Plaintiff must be consulted regarding any company decisions, until a subsequent hearing can be held to determine whether a preliminary injunction would remain in effect for the duration of the litigation.

12.     Further, should the Court grant the requested relief, any risk of harm to Defendant is minimal because (1) Michael Steimle is not asking for any unilateral control – rather, he is only seeking that he have an equal say in all decisions made; and (2) the Defendant will have a full and fair opportunity to set forth the justification for his unlawful actions during the subsequent hearing on Plaintiff's request for preliminary injunction.

3

DATED this 29th day of May, 2024.

/s/ Robert J. Walker
Robert J. Walker (7-4715)
John M. Walker (5-2224)
Walker Law, LLP
P.O. Box 22409
Cheyenne, WY   82003
(307) 529-2255 telephone

ATTORNEYS FOR PLAINTIFF

# WALKER LAW

April 3, 2024

***Via Email (as indicated)***
Gregory D Smith
GDSmith900@gmail.com

Costamerica Capital, LLC
Tod@Costamerica.org
Jerry@Costamerica.org

Jerome R. McSorley
Jerry@Eyetrax.net

Rogers Legacy Holdings LLC
Tim@TJRogers.net

JRLSA,LLC
JLutz@MetalRoofingSystems.com

Morgan Investment Holdings, LLC
LKNPros@gmail.com

SFERALEGAL
C/O Daniel Arias
dab@sferalegal.com

Kevin Tangen
C/o Esteban Aguero Guier
eag@aguilarcastillolove.com

Andrew Thompson
Andrew.Thompson@azurerenew.com

**RE:  Asure Renewables, S.A. – Notice of Authority**

To All Interested Individuals and Entities,

My firm has been retained by Michael Steimle related to his interests in relation to Azure Holdings LLC, a Wyoming Limited Liability Company.

According to the records I have reviewed, Azure Holdings LLC is owned by Michael Steimle and Andrew Thompson in equal shares (i.e. 50/50).  Pursuant to binding Wyoming statutory and common law, both my client, Mr. Steimle, and Mr. Thompson have equal rights in

**EXHIBIT A**

the management and conduct of the company's activities. *Please see* W.S. § 17-29-407(b)(ii).  In practice, this means that any difference arising among the members of Azure Holdings LLC may only be resolved by a majority (i.e. greater than 50%) of the members. *Please see* W.S. § 17-29-407(b)(iii).  Furthermore, ANY act outside the ordinary course of the activities of the company may ONLY be undertaken with the consent of ALL the members. *Please see* W.S. § 17-29-407(b)(iv) and *Mont. Food, Ltd. Liab. Co. v. Todosijevic*, 2015 WY 26, ¶ 24, 344 P.3d 751, 758 (holding that when an LLC is owned 50/50, neither member can act without the other's consent – even if that would create a deadlock within the company).

It is my understanding that Azure Holdings LLC is the seventy percent (70%) owner of Azure Renewables, S.A.

The intent of this letter is to put each of you on notice that Azure Holdings LLC can only vote or take action in relation to its interests in Azure Renewables, S.A. if Mr. Steimle and Mr. Thompson BOTH consent to the action.  Under Wyoming Law, neither Mr. Stemile nor Mr. Thompson are authorized to take any unilateral action on behalf of Azure Holdings LLC.  Any attempt to take such an action would be void.

I have been directed to immediately move to unwind any action or vote made for or on behalf of Azure Holdings LLC without the unanimous consent of both Mr. Thompson and Mr. Steimle.  To be clear, Wyoming law does not allow either Mr. Thompson or Mr. Steimle to take any action on behalf of Azure Holdings unless they both consent.

Further, pursuant to W.S. § 17-29-302, I have been directed to file with the Wyoming Secretary of State a "Statement of Authority" notifying the general public that any transaction that might bind Azure Holdings LLC can only be made by a unanimous act of both Mr. Thompson and Mr. Steimle.

Please also be advised that neither I nor my firm represents you or the interests of the Companies.  For that reason, nothing set forth within this letter should be considered legal advice. You have the right to consult with your own attorney and any questions you may have regarding your rights should be directed to that individual.

Respectfully,

*Robert Walker*

Robert J. Walker

# WALKER LAW

May 10, 2024

***Via EMail***
Members of Azure Renewables S.A.

      Re:    Azure Holding Group, LLC

Good Afternoon,

      My firm has been retained by Michael Steimle relating to his interests in Azure Holding Group, LLC.

      I have sent concurrently with this email a copy of the Complaint that Azure Holding Group, LLC and Michael Steimle have jointly filed against Andrew Thompson in the Wyoming Chancery Court. I have also concurrently sent a copy of the Motion for Preliminary Injunction that Azure Holding Group, LLC and Michael Steimle have filed in the same matter.

      Pursuant to Wyoming Statute §§ 17-29-407(b)(iii) – (iv), Azure Holding Group, LLC can only act through a vote of a majority of its members. In the case of an LLC owned equally between two members, all decisions must be unanimous. *See generally Mont. Food, LLC v. Todosijevic*, 2015 WY 26.

      In addition to providing you notice of the pending litigation, I hereby provide notice that my client, in his capacity as a 50% owner, member, and controlling interest holder in Azure Holding Group, LLC, has not and does not ratify, approve, consent to, or authorize any action to be taken, or that has already been taken, on behalf of Azure Holding Group, LLC without his express written authorization. Any decrees, votes, decisions, ratifications, or similar actions allegedly taken on behalf of Azure Holding Group, LLC by Andrew Thompson, without my clients' written confirmation, are unauthorized unilateral actions of Andrew Thompson and can in no wise be considered an action of Azure Holding Group, LLC.

      Furthermore, notice of any action, meeting, decision, or correspondence to Andrew Thompson, without copying Michael Steimle, is not and cannot be considered notice to Azure Holding Group, LLC because Mr. Thompson is not authorized to unilaterally accept such information on behalf of the company. Wherefore, any communication intended for Azure Holding Group, LLC must be directed to both its members.

      Please be advised that my firm does not represent Azure Renewables S.A. or any of your interests individually. Should you have any questions or concerns regarding this communication, you should consult with your own attorney.

      Respectfully,

      Robert J. Walker

**EXHIBIT B**

IN THE CHANCERY COURT, STATE OF WYOMING

MICHAEL STEIMLE, individually;   )
MICHAEL STEIMLE, derivatively on   )
behalf of and in the right of AZURE   )
HOLDING GROUP, LLC, a Wyoming   )
Limited Liability Company,   )
   )   Case No. CH – 2024-0000010
     *Plaintiffs,*   )
   )
vs.   )
   )
ANDREW THOMPSON, individually;   )
   )
     *Defendant.*   )

---

**ORDER ON MOTION FOR EMERGENCY TEMPORARY RESTRAINING ORDER**

---

THIS MATTER having come before the Court on Plaintiff's Motion for Emergency Temporary Restraining Order filed on May 29, 2024, and this Court being duly advises finds as follows:

1

1.     From the records provided, it appears that Plaintiff and Defendant are equal 50/50 controlling members of Azure Holding Group, LLC, a Wyoming Limited Liability Company ("Azure Holding").

2.     From the records provided, it appears that the Defendant is acting unilaterally in relation to the activities of Azure Holding, and that he used and voted Azure Holding's 70% controlling interest in Azure Renewables S.A., a Costa Rican entity, to remove Plaintiff as President of Azure Renewables.  It also appears that Defendant has unilaterally taken control over all of Azure Holding's funds and bank accounts, including those indirectly controlled by Azure Holding.

3.     From the records provided, there is substantial risk that irreparable harm will be caused if Defendant continues to have unrestricted ability to act unilaterally in the management of Azure Holding's affairs.

**NOW, THEREFORE IT IS HEREBY ORDERED ADJUDGED AND DECREED** that on or before Monday June 3, 2024, by 5:00 p.m., the Defendant shall provide Plaintiff equal administrative access to the Azure Holding bank account at Bank of America, and any other bank in which it might have an account, as well as equal access to any and all financial records being maintained on behalf of Azure Holding.

**IT IS FURTHER ORDERED** that Defendant shall immediately cease from taking any action on behalf of Azure Holding without the consent of Plaintiff.  This includes copying Plaintiff on any communications intended for Azure Holding, and not sending any communications on behalf of Azure Holding without Plaintiff's consent.  This also includes taking any vote or participating in any meetings on behalf of Azure Renewables.

2

**IT IS FURTHER ORDERED** that Defendant must immediately call a meeting of Azure Renewables and use the Plaintiff, Azure Holding's 70% controlling interest in that company to unwind any and all actions he took on behalf of Azure Holding without Plaintiff's consent; and if Defendant fails to do so on or before June 3, Plaintiff is authorized to immediately call a meeting of Azure Renewables on behalf of the Plaintiff Azure Holding's 70% controlling interest in that company to vote to unwind any and all actions taken by Defendant without Plaintiff's consent. Defendant is ordered to cooperate in this process and provide Plaintiff Steimle with any of the records necessary to record this action.

**IT IS FURTHER ORDERED** that Defendant shall cooperate in the process of unwinding his unilateral actions taken on behalf of Azure Holding in relation to Azure Renewables.  This includes sending communications to any and all shareholders, investors, contractors, or any other party he may have contacted in relation to the Plaintiff or in relation to Plaintiff's role within Azure Holding, Azure Development, or Azure Renewables.

**IT IS FURTHER ORDERED** that Defendant shall immediately freeze all transactions in the Azure Holding Bank of America bank account or the Azure Development bank account, and to not authorize any transactions out of that account unless Plaintiff expressly authorizes the transaction.

**IT IS FURTHER ORDERED** that Defendant shall not carry out or approve acts of disposition of the assets of Azure Renewables on behalf of Azure Holding, such as but not limited to leasing, selling or encumbering assets or selling or diluting stock, without prior Plaintiff's consent.

**IT IS FURTHER ORDERED** that Defendant must refrain from taking any actions acting on behalf of Azure Holding unilaterally, unless Defendant has received written instructions from

the Plaintiff consenting to such actions, including any actions representing Azure Holding as 70%

shareholder of Azure Renewables.

      **DATED** this _____ day of _____, 2024.


                                                   _____

                                                 District Judge

cc: All counsel of record